

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| **STATE OF MISSOURI,** | ) |
| | ) |
| **Respondent,** | ) |
| | ) **WD74285** |
| **v.** | ) |
| | ) **OPINION FILED:** |
| | ) **February 25, 2014** |
| **TRENT L. WILLIAMS,** | ) |
| | ) |
| **Appellant.** | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Robert M. Schieber, Judge**

**Before Division I:** Cynthia L. Martin, Presiding Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

Trent Williams ("Williams") appeals the judgment of the Circuit Court of Jackson County, Missouri ("trial court"), finding him guilty, after a jury trial, of the class A felony of murder in the first degree and sentencing him to life imprisonment without the possibility of probation or parole. Williams challenges his conviction and sentence in light of *Miller v. Alabama*, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Williams also asserts that the trial court erred in overruling his motion for new trial based on a claim of newly discovered evidence and in admitting certain gun evidence. Williams's evidentiary claims lack merit, but his sentencing claim is meritorious in light of recent changes in Eighth Amendment jurisprudence. Therefore,

we affirm in part and reverse in part and remand for further proceedings consistent with our ruling today.

## Facts and Procedural History[1]

On June 7, 1993, Williams and his brother Sean[2] were watching television at their parents' house on East 68th Terrace in Kansas City, Missouri, when Sean's girlfriend stopped by to show Sean her new car. Sean and his girlfriend went for a ride around the neighborhood. When they drove by someone the girlfriend thought was Cameron Sheppard ("Victim"), Sean's demeanor changed. He became angry and told his girlfriend to drive back to his parents' house. Once inside, Williams and Sean left their parents' house together.

At about 12:10 a.m. the next day, Williams, Sean, and the Victim were standing on the sidewalk across the street from 4014 East 67th Terrace having words with each other. Williams was holding an assault rifle; Sean was holding a pistol grip 12-gauge shotgun; the Victim was unarmed. Williams shot the Victim first, then Sean shot him,[3] and the Victim fell to the ground. Williams and Sean ran from the scene through an alley. A third person was in the alley with Williams and Sean, but the third person did not have a weapon.

When Sean's girlfriend left Sean's parents' house and got into her car, Sean and Williams came up from behind. Sean told her to open the trunk, and he would go with her to her Kansas residence. He put a bag in the trunk. Williams and another man were with Sean, who appeared winded, agitated, and excited. She dropped the unidentified man off down the street and drove

---

[1] Williams does not challenge the sufficiency of the evidence to support his conviction. On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

[2] Given that members of the Williams family have the same last name, we refer to defendant Trent Williams's brothers, Sean and Darwin, by their first names to avoid confusion. No familiarity or disrespect is intended.

[3] Sean testified that about midnight on May 28, 1993, he was in his car parked in the driveway of his and Darwin's house waiting for Darwin when an unknown person in a van fired a shotgun at his car causing injuries to his eyes, nose, and skull. He later believed that his assailant was Cameron Sheppard. Sean admitted that he shot Sheppard in retaliation.

Williams and Sean to her residence, where Williams and Sean spent the night. In the morning, she drove Williams and Sean to the house Sean shared with their brother Darwin.

The Victim died from multiple high velocity gunshot wounds (at least ten were found by the medical examiner) and at least one shotgun wound to the left side of his back, left arm, and left side of the head. Investigators found five live shotgun shells and two spent shotgun shells at the crime scene, as well as twenty-two spent PMC 7.62x39 shell casings. Impact marks caused from a gun being fired in a downward position were found at the crime scene, indicating that the Victim was lying on the ground while being shot.

About a week after the shooting, the police searched Sean and Darwin's house and found a PETA SKS 7.62x39 millimeter rifle, a 12-gauge Winchester shotgun shell slug on the box springs under the mattress, a rifle magazine loaded with live ammunition, and ten live rounds head-stamped PMC 7.62x39 millimeters.[4]

On January 27, 2009, a petition was filed in the Family Court Division of the Circuit Court of Jackson County, Missouri, alleging that on June 8, 1993,[5] Williams, a juvenile,[6] committed murder in the first degree, § 565.020, RSMo Cum. Supp. 1992. Williams was also charged with armed criminal action, § 571.015. The juvenile officer moved for a hearing pursuant to section 211.071 on whether Williams should be transferred from Family Court to a court of general jurisdiction. After a hearing held on February 11, 2009, the Family Court dismissed the juvenile officer's petition and transferred jurisdiction over Williams to the court of general jurisdiction for the purpose of prosecuting him as an adult. Thereafter, Williams was

---

[4] At trial, the parties stipulated that the shell casings recovered at the homicide scene were not fired by the SKS rifle found in the house.
[5] Police reopened the investigation of this "cold" murder case after being contacted years later by a person who wished to provide information about the homocide.
[6] Williams was born on June 19, 1976.

3

charged by indictment in the Jackson County Circuit Court with murder in the first degree and armed criminal action.[7]

Williams's first trial in December 2010 ended in a mistrial because of a hung jury. He was re-tried on June 13-17, 2011, and the State presented the evidence summarized above. While Williams did not testify at trial, he called several witnesses who testified that he was not involved in the shooting. Sean testified that he and a man named Trevor Wilson, who died prior to Williams's trial, shot the Victim and that Williams was not involved. The jury was instructed on both first- and second-degree murder and found Williams guilty of first-degree murder and assessed punishment at life imprisonment. Thereafter, the trial court sentenced Williams to life imprisonment without the possibility of probation or parole.

Williams timely appeals.

### Points I and II – Sentencing

In Points I and II, Williams claims that the first-degree murder statute, § 565.020, is unconstitutional as applied to him in light of the United States Supreme Court's decision in *Miller v. Alabama*, 132 S.Ct. 2455 (2012). In Point I, Williams argues that in the absence of a valid penalty provision for juvenile offenders, section 565.020 is unenforceable against him; therefore, his conviction and sentence for first-degree murder should be reversed, and either he should be discharged, or a judgment of conviction for murder in the second degree should be entered, and he should be re-sentenced. In the alternative, in Point II, Williams claims that he should be re-sentenced on first-degree murder to an authorized term of imprisonment for a class A felony.

---

[7] Williams's motion to dismiss the armed criminal action charge on statute of limitations grounds was granted by the trial court on May 27, 2010.

4

**Standard of Review**

The Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a state statute under article V, section 3 of the Missouri Constitution. However, a party's mere assertion that a statute is unconstitutional does not necessarily deprive this court of jurisdiction unless that issue is real and substantial and not merely colorable. *State v. Davis*, 203 S.W.3d 796, 801 (Mo. App. W.D. 2006). Where "the Missouri Supreme Court has already twice ruled on the precise issue presented by the Defendant, the court of appeals has jurisdiction, but must . . . follow the rule decided by the Supreme Court." *Id.* (internal quotation omitted). *See also Austin W. Road Mach. Co. v. City of New Madrid*, 185 S.W.2d 850, 851 (Mo. App. 1945) ("No construction of the constitutional provision is called for, but merely its application. . . . Hence, this court has jurisdiction.").

The issues raised by Williams concerning the constitutionality of the first-degree murder statute as applied to juvenile offenders in light of *Miller* and the sentencing procedures upon remand were decided by the Missouri Supreme Court in companion cases handed down July 30, 2013: *State v. Hart*, 404 S.W.3d 232 (Mo. banc 2013), and *State v. Nathan*, 404 S.W.3d 253 (Mo. banc 2013). Therefore, we have jurisdiction to consider Williams's appeal.

**Analysis**

Williams was found guilty of first-degree murder under section 565.020, which in 1993[8] provided:

1. A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter.

2. Murder in the first degree is a class A felony, and the punishment shall be either death or imprisonment for life without eligibility for probation or parole, or

---

[8] "[A] defendant will be sentenced according to the law in effect at the time the offense was committed unless a lesser punishment is required by a change in the law *creating* the offense itself." *State v. Johnson*, 150 S.W.3d 132, 138 (Mo. App. E.D. 2004).

release except by act of the governor; except that, if a person has not reached his sixteenth birthday at the time of the commission of the crime, the punishment shall be imprisonment for life without eligibility for probation or parole, or release except by act of the governor.

§ 565.020, RSMo Cum. Supp. 1992. At the time of trial in 2011, Williams was not eligible for the death penalty due to his age,[9] *see Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding that the death penalty was categorically prohibited for juvenile offenders). Therefore, the only other punishment authorized by section 565.020.2 was life in prison with no possibility of probation or parole.

The United States Supreme Court held in *Miller* that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" when the sentencer has not considered an "offender's youth and attendant characteristics." 132 S.Ct. at 2469, 2471. In *Hart*, a first-degree murder case involving a juvenile, the Missouri Supreme Court acknowledged *Miller's* holding:[10]

> *Miller* does not categorically bar sentencing a juvenile offender who commits first-degree murder to life without parole. Instead, *Miller* holds that such a sentence is constitutionally permissible as long as the sentencer determines it is just and appropriate in light of the defendant's age, maturity, and the other factors discussed in *Miller*.

*Hart*, 404 S.W.3d at 237-38. Thus, *Hart* expressly rejected Williams's argument in Point I that in the absence of a valid penalty provision for juvenile offenders, section 565.020 is unenforceable against him.

Our decision in this case is controlled by *Hart*:

> [defendant's] sentence of life without parole for first-degree murder violates the Eighth Amendment because, as in *Miller*, it was imposed with no individualized consideration of the myriad of factors discussed in the *Miller* decision.

---

[9] Williams was seventeen years old at the time he committed the murder.

[10] Williams's direct appeal was filed August 31, 2011. Because *Miller* was handed down on June 25, 2012, while Williams's first-degree murder conviction was on direct appeal (and, therefore, not yet final), the State concedes that *Miller* is applicable to this case. *See State v. Hart*, 404 S.W.3d 232, 235 n.3 (Mo. banc 2013).

> Accordingly, [defendant] must be re-sentenced in accordance with *Miller's* constitutional safeguards requiring the sentencer to consider whether a sentence of life without parole is just and appropriate in light of [defendant's] age and the other circumstances surrounding his offense.

*Hart*, 404 S.W.3d at 235. In applying *Miller*, the *Hart* court held that the constitutional defect in Hart's sentence for first-degree murder was not its length or the fact that he would not be eligible for parole. *Id.* at 238. "Instead, Hart's sentence of life without parole violates the Eighth Amendment because—and only because—it was imposed without any opportunity for the sentencer to consider whether this punishment is just and appropriate in light of Hart's age, maturity[,] and the other factors discussed in *Miller*." *Id.* The court continued that the "case must be remanded for re-sentencing using a process by which the sentencer can conduct the individualized analysis required by *Miller* and, on that basis, determine whether life without parole is a just and appropriate sentence for Hart under all the circumstances." *Id.* at 238-39. The court considered Hart's claim—that section 565.020 is void for lack of a constitutionally permissible punishment—premature until the case is remanded and the sentencer makes the determination *Miller* requires. *Id.* at 239.

However, because Williams's sentence of life without probation or parole for first-degree murder was imposed in a manner that violated the Eighth Amendment, he must be re-sentenced using the procedure described in *Miller* as interpreted in *Hart*. If Williams does not choose to waive jury sentencing on remand, the State will bear the burden of persuading the jury beyond a reasonable doubt that a sentence of life without parole is just and reasonable under all the circumstances. *Hart*, 404 S.W.3d at 241.

During the sentencing phase on remand, after the parties present their evidence and arguments, and before the jury begins deliberating, the trial court will instruct the jury that "if it is not persuaded that life without parole is a just and appropriate sentence under all the

circumstances of the case, additional instructions concerning applicable punishments will be given at that time." *Id.* at 242. Thereafter, "the [jury] must determine whether life without parole is a just and appropriate sentence for the first degree murder [the defendant] committed." *Id.* If the State meets its burden of persuading the jury beyond a reasonable doubt, then the trial court must impose the sentence. *Id.* "If the State fails to persuade the [jury] of this proposition beyond a reasonable doubt, [Williams] cannot receive that sentence." *Id.* "In that event, the trial court must declare section 565.020 void as applied to [Williams] on the ground that it fails to provide a constitutionally valid punishment for the crime it purports to create." *Id.* "If section 565.020 is void, the trial court must vacate the jury's verdict finding [Williams] guilty of first-degree murder and enter a new finding that [Williams] is guilty of [the lesser-included offense of] second-degree murder under section 565.021.1(1)." *Id.* Should it become necessary for the trial court to enter those findings, the trial court would then instruct the jury as to the range of punishment authorized by section 558.011.1(1), and the jury would then determine Williams's sentence within the applicable statutory range. *Id.* at 243. Thus, the *Hart* court expressly rejected Williams's claim for appellate remedy in Point II that he should be re-sentenced on first-degree murder to an authorized term of imprisonment for a class A felony; instead, the remedy is that as has been summarized above.

To the extent Points I and II have asserted claims of error based upon the Eighth Amendment, we agree and, pursuant to the direction of *Hart*, this case is remanded for Williams to be re-sentenced under the procedures as outlined in this opinion.

### Point III – Newly Discovered Evidence

In his third point on appeal, Williams argues that the trial court abused its discretion in overruling his motion for new trial based on newly discovered evidence.

8

**Standard of Review**

Rule 29.11 provides that the court may grant a new trial "upon good cause shown." A trial court has substantial discretion in deciding whether a new trial should be granted, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Stewart*, 313 S.W.3d 661, 665 (Mo. banc 2010). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* "New trials based on newly discovered evidence are disfavored . . . ." *Id.*

To obtain a new trial on the basis of newly discovered evidence, Williams was required to show: "(1) the facts constituting the newly discovered evidence came to his knowledge after the trial; (2) his lack of prior knowledge was not owing to want of due diligence on his part; (3) the newly discovered evidence is so material that it is likely to produce a different result at a new trial; and (4) the evidence is not merely cumulative evidence or evidence impeaching a witness's credibility." *Id.*

**Analysis**

In his motion for new trial, Williams alleged that his trial counsel spoke with Sean in the week after his *second* trial,[11] and Sean disclosed to trial counsel that Sean had not been "completely forthcoming" in his testimony . . . apparently at two different trials. Sean allegedly told Williams's trial counsel that "there was a third person present at the time that [Victim] was shot by [Sean] and others." The "third person" was identified as Sean's (and Williams's) cousin. In the motion for new trial, Williams alleged that his cousin "could" have testified that Williams was not involved in the shooting; and if the newly discovered evidence had been available to trial

---

[11] It has not gone unnoticed by this court that Sean's memory recollection did *not* occur after Williams's first trial, which resulted in a mistrial due to a hung jury, and instead, the memory recollection occurred only after Williams's conviction by a jury in the re-trial.

9

counsel before trial, counsel's strategy "could have been substantially altered[,] and the outcome of the trial could likely [have] been different."

There are a number of fatal deficiencies with this "newly discovered evidence."

First, this vaguely worded one-paragraph affidavit is not the affidavit of the witness with personal knowledge of the events described in the affidavit; rather, it is the hearsay testimony of Williams's trial counsel about a witness who is Williams's brother and was presumably available to execute an affidavit based upon personal knowledge, not hearsay. At best, this hearsay "evidence" referenced in trial counsel's affidavit might be useful for impeaching the defense's own witness (which carries with it a host of other issues), but it is clearly not substantive evidence warranting a new trial. *State v. Westcott*, 857 S.W.2d 393, 398 (Mo. App. W.D. 1993) ("[Affiant's] testimony is hearsay, useful perhaps for impeach[ment] . . . , but not as substantive evidence."). *See also State v. Gatewood*, 965 S.W.2d 852, 859 (Mo. App. W.D. 1998) (holding an affidavit containing impeachment evidence is insufficient to support the granting of a new trial).

Second, the affidavit does *not* indicate that Williams was *not* present at the time that the Victim was shot by "Sean and others," and numerous eyewitnesses from trial specifically connect Williams to the murder scene at the time of the murder. Thus, presumably, Williams himself was aware of his cousin's presence at the murder scene, and if so, this affidavit does not reflect "newly discovered evidence." "Newly discovered evidence . . . is evidence that the *defendant* was not aware existed until after the conclusion of the trial." *State v. Smith*, 181 S.W.3d 634, 638 (Mo. App. E.D. 2006) (citing *State v. Reed*, 971 S.W.2d 344, 349 (Mo. App. W.D. 1998)) (emphasis added).

Third, the affidavit suggests that the Victim was shot by "Sean and others," suggesting at least three shooters, not two. Since the affidavit does not suggest that Williams was not present, and other eyewitnesses place Williams at the murder scene and fleeing the murder scene after the murder, there simply is nothing exculpatory about this "newly discovered evidence." Thus, there is nothing about this evidence that is "so material that it is likely to produce a different result at a new trial." *State v. Stewart*, 313 S.W.3d 661, 666 (Mo. banc 2010).

Fourth, there is no indication from this "newly discovered evidence" about precisely what Williams's cousin would testify to, so there is nothing but speculation in the affidavit about the allegedly exculpatory evidence that *possibly* "could" exist from this member of Williams's family who, again, would presumably have been available to Williams at the time of the motion for new trial to execute his own affidavit about what testimony he would have given. "An affidavit based upon mere speculation or hope does not establish the existence of new evidence, and cannot be the basis for sustaining a motion for new trial." *State v. Batek*, 638 S.W.2d 809, 813 (Mo. App. E.D. 1982).

Point III is denied.

### Point IV – Gun Evidence

In his fourth point on appeal, Williams alleges that the trial court abused its discretion in admitting into evidence an SKS rifle and magazine and ammunition (including photographs of those items) found during a search of Williams's brothers' (Sean and Darwin) house more than one week after the Victim's murder, the same house that eyewitness testimony places Williams at immediately after the murder of the victim. Williams claims that this evidence was irrelevant to the charged offense and was inappropriately offered as evidence of uncharged crimes.

**Standard of Review**

"The standard of review for the admission of evidence is abuse of discretion." *State v. Peal*, 393 S.W.3d 621, 625 (Mo. App. W.D. 2013) (internal quotation omitted). "A trial court has broad discretion to admit or exclude evidence at trial." *Id.* (internal quotation omitted). "The trial judge is also in the best position to weigh the probative value of the evidence against its prejudicial effect." *Id.* (internal quotation omitted). "Abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* (internal quotation omitted). Only if the error is so prejudicial that it deprived the defendant of a fair trial is reversal warranted. *Id.* Trial court error is not prejudicial unless there is a reasonable probability that it affected the outcome of the trial. *Id.*

**Analysis**

First, we note that, "[a] defendant cannot invite error and then raise it as reversible error on appeal." *State v. Riggins*, 987 S.W.2d 457, 463 (Mo. App. W.D. 1999).

At trial, a witness for the State testified that on the night and time of the murder, he was sitting on the back steps of his elevated patio when he heard multiple gunshots from a semi-automatic and a 12-gauge weapon. He saw two people run down the alley. He recalled giving a statement to the police identifying Williams as carrying an assault rifle with a banana clip. The witness testified that the two individuals ran to Sean and Darwin's house, and one of the individuals, whom the witness identified as Sean, yelled at Darwin to open the door. Without objection, the State asked the witness what weapons he told the police the two men were carrying as they ran out of the alley, and the witness responded an SKS semi-automatic weapon, which looked like an assault rifle with a banana clip, and a Mossberg shotgun with a pistol grip.

The witness testified that he had been in Sean and Darwin's house when Williams was there and that he saw an SKS and a Mossberg in the house.

Defense counsel cross-examined the witness, inquiring whether the witness told the police that he saw Williams and Sean run out of the alley and that Sean had an SKS because he knew that there was an SKS in Sean and Darwin's house:

> Q. By 2002, you tell the police that you saw Shawn [sic] and [Williams] run out of the alley, and you saw Shawn with an SKS, correct? Is that what you told them in 2002?
>
> A. Yes.
>
> Q. And did you tell them that because you knew that there was an SKS in the house, in the Williams' house?
>
> A. Yes.
>
> Q. At Shawn and Darwin's house?
>
> A. Yes.

Later during the cross-examination, defense counsel inquired of the witness about his 2008 statement to the police during which he identified the shotgun one of the two men running out of the alley was carrying as a Mossberg shotgun:

> Q. . . . [Y]ou said that because you had seen at one point a Mossberg shotgun in the Williams' house, right?
>
> A. Right.
>
> Q. Just like you had seen an SKS rifle in their house?
>
> A. Right.
>
> Q. And that's where you came up with the description of the weapons?
>
> A. Yes.

13

*After* this testimony, the State offered the parties' stipulation (subject to Williams's counsel's relevance objection) to the items found during the search of Sean and Darwin's house into evidence (which included the SKS rifle)—a fact that the jury already knew as a direct result of *defense counsel's* cross-examination of the witness. In other words, defense counsel solicited the response from the witness about the weapons—and where the weapons came from—evidence that Williams now argues was inadmissible and was so prejudicial that even the mere mention of this evidence in Williams's trial affected the outcome of his trial. Having invited this evidence into the record, however, Williams cannot now be heard to complain about its admission. *Riggins*, 987 S.W.2d at 463. "[W]hen a defendant presents the same evidence to which he objected when offered by the state, any claim of prejudice by presentation of the otherwise inadmissible evidence of another crime is waived." *State v. Hitchcock*, 329 S.W.3d 741, 748-49 (Mo. App. S.D. 2011) (internal quotation omitted). *See also State v. Miller*, 372 S.W.3d 455, 474 (Mo. banc 2012) ("The complaining party cannot be prejudiced by the allegedly inadmissible evidence if that party offers evidence to the same effect as the challenged evidence.") (internal quotation omitted); *State v. Dunson*, 979 S.W.2d 237, 244 (Mo. App. W.D. 1998) ("A defendant cannot challenge the introduction of evidence by the prosecution when he presents evidence of the same nature.").

Even were we to assume, *arguendo*, that the challenged evidence was admitted in error,[12] it was not prejudicial. Errors in admitting evidence require reversal only when the prejudice

---

[12] We are not persuaded by Williams that the evidence complained of, even had it been properly objected to and not first offered by the defense through trial testimony, was admitted in error. "Weapons or objects connected with the defendant or the crime, when sufficiently identified, become relevant and possess probative value." *State v. Speaks*, 298 S.W.3d 70, 81 (Mo. App. E.D. 2009). Here, the evidence recovered from the house that Williams was seen fleeing to after the murder of the victim contained ammunition of the same type found at the crime scene and weaponry similar in form or character to the weapon that eyewitnesses testified that Williams possessed at the time of the murder.

> [A] weapon or instrument found in the possession of accused or of his criminal associates which,
> although not identified as the one actually used, is similar in form and character thereto, or which,

14

from the improper admission is outcome-determinative. *State v. Berwald*, 186 S.W.3d 349, 362 (Mo. App. W.D. 2005). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *Id.* (internal quotation omitted). In this case, there was eyewitness testimony that Williams shot the Victim with an assault rifle and then fled the scene to the house where the disputed evidence was recovered. Other witnesses saw Williams with an automatic weapon. When considered with and balanced against all the evidence properly admitted, we find that there is not a reasonable probability that the jury would have acquitted Williams but for the admission of the challenged evidence.

Point IV is denied.

## Conclusion

For the reasons set forth above, this case is remanded for Williams to be re-sentenced in proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and
Karen King Mitchell, Judge, concur.

---

from the circumstances of the finding justifies an inference of the likelihood or possibility of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred . . . .

*State v. Cuckovich*, 485 S.W.2d 16, 23 (Mo. banc 1972) (internal quotation omitted). *See also State v. Ramsey*, 820 S.W.2d 663, 666 (Mo. App. W.D. 1991) ("Weapons found at or near the crime scene or which tend to explain the manner in which a crime was committed are generally found to be admissible.").