

In the

# Missouri Court of Appeals

## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD75388 |
| | ) | |
| v. | ) | OPINION FILED:  May 27, 2014 |
| | ) | |
| REYES E. OLIVAS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable Jacqueline A. Cook, Judge

Before Division Two:  Victor C. Howard, Presiding Judge, Alok Ahuja, Judge and
Gary D. Witt, Judge

## INTRODUCTION

This is an appeal from a Cass County Circuit Court judgment convicting Appellant Reyes Esteban Olivas ("Olivas") of first-degree murder and armed criminal action, for which he was given consecutive sentences of life imprisonment without the possibility of parole and life imprisonment, respectively.  On January 8, 2010, a juvenile petition was filed in Cass County Circuit Court alleging that Olivas (age sixteen at the time of the offense) committed conduct that would constitute first-degree murder and armed criminal action if committed by an adult.  Following a February 19, 2010 hearing, the juvenile

division of the circuit court entered an order dismissing the juvenile court petition and relinquishing juvenile court jurisdiction over Olivas to allow his prosecution under the general law. Olivas was thereafter indicted in Cass County Circuit Court on one count of first-degree murder and one count of armed criminal action for the January 7, 2010 murder of K.R.,[1] Olivas's cousin.

Olivas, who waived jury sentencing, was tried by a jury. The jury, which was instructed, in the alternative, on both first- and second-degree murder, found Olivas guilty of first-degree murder as well as armed criminal action. The court later sentenced Olivas to consecutive sentences of life imprisonment without the possibility of probation or parole on the murder charge and life imprisonment for the armed criminal action charge. Olivas appeals.

On appeal, Olivas asserts two points. First, Olivas challenges the sufficiency of the evidence to prove deliberation in order to convict him for the first-degree murder charge. Second, Olivas raises a constitutional challenge to section 565.020.2[2] which mandates that the sentence for a juvenile defendant be life without eligibility for probation or parole. Olivas's first claim lacks merit, but his constitutional challenge is meritorious in light of recent decisions in Eighth Amendment jurisprudence. The State concedes that Point Two has merit. Therefore, we affirm in part and remand for re-sentencing consistent with this opinion.

---

[1] We use the victim's initials pursuant to Section 566.226.
[2] All statutory references are to RSMo 2000 cumulative as currently supplemented unless otherwise indicated.

## FACTS AND PROCEDURAL HISTORY[3]

In late November 2009, Olivas, who was then sixteen years old, moved in with his maternal uncle, Manuel Rios, after Olivas had "some problems" while living in a nearby town with other relatives. Mr. Rios lived in Harrisonville with his wife, Monica, and their three children, K.R. and her two younger brothers.

On January 7, 2010, school was closed because of snow. Mr. Rios drove Mrs. Rios to work that morning because of the bad roads. K.R., who was then fourteen years old, her two younger brothers, and Olivas stayed home with no adults. The office where Mrs. Rios worked closed early that day because of the weather, and she called Mr. Rios around 11:30 a.m. to pick her up. While K.R.'s parents were running some errands before returning home, K.R. called her mother to say that she, her brothers, and Olivas were watching television and playing.

Forty-five minutes later, Mrs. Rios received another phone call from the house, but the only thing she heard sounded like a moan, and then the phone went dead. Mrs. Rios then repeatedly called the house, but she got no answer. She also sent text messages to Olivas's cell phone, but received no response from him. K.R.'s parents arrived home about an hour after receiving the second phone call from the house. Their two young sons told them that something was wrong with K.R. because she was "full of catsup" in the parents' bedroom. K.R.'s parents found her lying bloody and unconscious on their

---

[3] We view the facts in the light most favorable to the verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

bedroom floor; the phone in the bedroom had been unplugged from the wall. Olivas was not in the house.

K.R. was declared dead when the ambulance arrived. She had a laceration to the left side of her body, from which her intestines were protruding. K.R. suffered multiple stabbing, puncture, and incised wounds; she also had blunt force injuries. There were two incised wounds to her neck and one on the right side of her chest. A stab wound on the side of K.R.'s chest injured a rib, her stomach, and the small intestine. Another stab wound to the abdomen cut K.R.'s aorta and caused bleeding into the abdomen. An incised wound was found on K.R.'s ribcage, and two puncture wounds were on her abdomen. K.R. had two stab wounds in her back, one of which went through her ribs, both lobes of her left lung, and through a rib on the front of her body. Another stab wound to her lower back injured her rib, diaphragm, and mesentery. K.R. had two incised wounds on her back as well. Blood spatter was on the headboard.

K.R. also had several defensive wounds on her fingers and hands and a stab wound on her left arm. She suffered blunt-force trauma on her head and back, and contusions were found on her chest and abdomen. The cause of K.R.'s death was multiple stab wounds that resulted in excessive bleeding; the stab wounds to the aorta and to the lung were each fatal by themselves. Police discovered footprints in the snow leading from the open door in the back of the garage, and they eventually received information that Olivas was at a nearby house watching TV with friends. When police arrived at the house, Olivas locked himself in a bathroom and would not come out or

4

respond to the officers.  Olivas was arrested after officers picked the bathroom lock and entered.

After Olivas received *Miranda*[4] warnings and waived them, he was interviewed by a detective in the presence of his uncle (not K.R.'s father, but his mother's brother-in-law), and a juvenile officer.  Olivas admitted that he stabbed K.R.  He said that he stabbed her because she had called him "stupid" while she was on the phone.  Olivas then went to the kitchen and got a big knife with a wide blade and brown handle off the kitchen counter.  He said that he then went upstairs (K.R.'s brothers were still downstairs) and pointed the knife at K.R., who was scared.  K.R., who was by the phone, told Olivas to stop pointing the knife at her or she would call her parents.

Olivas said that he then stabbed K.R., first in the right side of her stomach and then two more times in the side and back.  He admitted stabbing her in the back as K.R. attempted to get away from him.  He conceded that he might have stabbed her more than three times.  K.R. fell down and stopped moving after he stabbed her, but he knew that she was still alive because he could hear her breathing louder than normal.  Olivas said that he then went downstairs and packed a bag with a pair of jeans and a couple of shirts. When Olivas came back upstairs, he saw K.R. had gotten up and was on the floor by the bathroom door.  Olivas dragged her across the floor and leaned her up against the bed. He then put the knife in a dresser drawer in the bedroom and left the house.  Testing on the knife police recovered from the dresser drawer revealed K.R.'s blood.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Olivas provided the police with a written statement consistent with his oral statement.

While Olivas was being held in a juvenile detention facility in early February 2010,[5] he told another juvenile housed in the facility that he had killed his cousin. Olivas told the juvenile that he had asked K.R. to have sex with him and that she had responded, "Are you stupid?" Afraid that K.R. might tell her parents about this, Olivas said that he got a knife from the kitchen and stabbed K.R. He also said that K.R. ran away from him, but that he chased her into a bedroom. Olivas said that he then stabbed K.R. perhaps seven times. He also claimed to have done "some sexual stuff" with her body, but Olivas offered no details about the sexual acts.[6] Olivas said that he sat K.R. up so she would bleed out and die faster. He also took out the phone line so no one could call the house; he then left the house on foot.

Olivas did not testify at trial, and he offered no evidence. The jury convicted him of murder in the first degree and armed criminal action. He waived jury sentencing and was sentenced by the trial court.

## ANALYSIS

Olivas challenges the sufficiency of the evidence to prove deliberation for the first-degree murder conviction and raises a constitutional challenge to section 565.020.2[7] which mandates that the sentence for a juvenile defendant convicted of first-degree

---

[5] Olivas was in Cass County's Juvenile Justice Detention Facility from January 7, 2010, until at least February 19, 2010, the date the juvenile court relinquished its jurisdiction over Olivas.

[6] K.R's body showed no signs of sexual abuse and no semen was found on it.

[7] All statutory references are to RSMo 2000 cumulative as supplemented unless otherwise indicated.

murder is solely limited to life in prison without the possibility of probation or parole ("LWOP").

## POINT I

In Point One, Olivas alleges that because there was insufficient evidence that he deliberated before killing K.R. it was error for the trial court to enter a judgment of conviction on that count. We disagree.

### Standard of Review

> [Our] review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt. This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence; all evidence and inferences to the contrary are disregarded. When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a super juror with veto powers, but gives great deference to the trier of fact. This Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.

*State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011) (citations and quotations omitted).

### Discussion

Section 565.020.1 states that "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." "Deliberation means cool reflection for any length of time no matter how brief."

7

§ 565.002(3). "Deliberation is not a question of time—an instant is sufficient—and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013). "Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *Id.* Further, deliberation need only be momentary. *State v. Frazier*, 404 S.W.3d 407, 414 (Mo. App. W.D. 2013) (citation omitted).

"Evidence of multiple stab wounds, repeated blows, the failure to seek medical help, a prolonged struggle, ample opportunity to stop the attack, or that the defendant brooded over his actions before taking them can support an inference of deliberation." *Frazier*, 404 S.W.3d at 414 (citations omitted). "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." *State v. Johnston*, 957 S.W.2d 734, 747 (Mo. banc 1997) (internal citations omitted).

Evidence that a defendant had to take a few steps towards a victim before grabbing and stabbing her with a knife gives rise to the reasonable inference that the defendant reflected for at least the time it took to reach the victim before stabbing her. *State v. Clemmons*, 753 S.W.2d 901, 906 (Mo. banc 1988) (citations omitted). "These inferences alone support a jury finding of deliberation." *Id.*

Here, Olivas became angry, went to the kitchen, selected a large butcher knife, and followed K.R. upstairs where he threatened her with the knife. When she warned him that she would call her parents, he said "do it." Inherent to this scenario was a deliberate

8

pause in time as Olivas waited to see if K.R. would make the phone call. When she did begin to call them, he attacked her and stabbed her repeatedly. The evidence revealed multiple stab wounds, multiple defensive wounds, and a victim who was still alive and trying to escape. *See Frazier*, 404 S.W.3d at 414-15. Olivas had ample time to stop the attack after the first stab wound. However, instead of stopping his attack and attempting to save K.R., Olivas found her trying to walk so he drug her back to the bedroom and sat her up so "that she could bleed out and die faster." He then unplugged the phone so she could not seek assistance and left the house.

As our Supreme Court noted in *Nathan*, "the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." 404 S.W.3d at 266. Based on the facts and the law, there was ample and sufficient evidence before the jury that Olivas deliberated before killing K.R. Point One is denied.

### POINT II

In Point Two, Olivas raises a challenge to the constitutionality of the sentencing requirements for a minor convicted of first-degree murder. Olivas challenges his conviction and sentence in light of *Miller v. Alabama,* —— U.S. ——, 132 S. Ct. 2455 (2012). The State concedes this point has merit.

### Standard of Review

The Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a state statute under article V, section 3 of the Missouri Constitution. However, a party's mere assertion that a statute is unconstitutional does not necessarily

9

deprive this court of jurisdiction unless that issue is real and substantial and not merely colorable. *State v. Davis,* 203 S.W.3d 796, 801 (Mo. App. W.D. 2006). Where "the Missouri Supreme Court has already twice ruled on the precise issue presented by the Defendant, the court of appeals has jurisdiction, but must . . . follow the rule decided by the Supreme Court." *Id.* (internal quotation omitted).

The issues raised by Olivas concerning the constitutionality of the sentencing provisions of the first-degree murder statute as applied to juvenile offenders in light of *Miller* and the sentencing procedures upon remand were decided by the Missouri Supreme Court in companion cases handed down on July 30, 2013: *State v. Hart,* 404 S.W.3d 232 (Mo. banc 2013), and *Nathan,* 404 S.W.3d 253. Therefore, we have jurisdiction to consider this appeal.

## Discussion

Olivas claims that the sentencing provision of the first-degree murder statute, section 565.020, is unconstitutional as applied to him in light of his age and the United States Supreme Court's decision in *Miller.* He argues that his sentence of LWOP violates his rights under the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution and that, as such, he must be re-sentenced. The State concedes that, based on the Missouri Supreme Court's holding in *Hart*, Olivas's sentence must be set aside and the case remanded for re-sentencing in compliance with the directives outlined in *Hart*.

Section 565.020.2 states:

> Murder in the first degree is a class A felony, and the punishment shall be either death or imprisonment for life without eligibility for probation or parole, or release except by act of the governor; except that, if

10

a person has not reached his sixteenth birthday at the time of the commission of the crime, the punishment shall be imprisonment for life without eligibility for probation or parole, or release except by act of the governor.

At the time of trial, Olivas was not eligible for the death penalty due to his age at the time he committed the offense.[8]

We recently analyzed an identical challenge to section 565.020.2 in *State v. Williams*, 420 S.W.3d 713 (Mo. App. W.D. 2014). There we held that a juvenile defendant convicted of first-degree murder must be re-sentenced in light of our Supreme Court's holding in *Hart*. In *Hart,* a first-degree murder case involving a juvenile, the Missouri Supreme Court acknowledged *Miller's* holding:

> *Miller* does not categorically bar sentencing a juvenile offender who commits first-degree murder to life without parole. Instead, *Miller* holds that such a sentence is constitutionally permissible as long as the sentencer determines it is just and appropriate in light of the defendant's age, maturity, and the other factors discussed in *Miller.*

*Hart,* 404 S.W.3d at 237–38.

The United States Supreme Court held in *Miller* that "the Eighth Amendment forbids a sentencing scheme that mandates life without parole for juvenile offenders" when the sentencing entity (judge or jury) has not considered an "offender's youth and attendant characteristics." *Miller*, 132 S.Ct. at 2469, 2471. Our decision in the case at bar is controlled by the holding in *Hart:*

> [Defendant's] sentence of life without parole for first-degree murder violates the Eighth Amendment because, as in *Miller,* it was imposed with no individualized consideration of the myriad of factors discussed in the

---

[8] *See Roper v. Simmons*, 543 U.S. 551 (2005) (holding that a person who was a juvenile at the time of the offense cannot be sentenced to death).

> *Miller* decision. Accordingly, [defendant] must be re-sentenced in accordance with *Miller's* constitutional safeguards requiring the sentencer to consider whether a sentence of life without parole is just and appropriate in light of [defendant's] age and the other circumstances surrounding his offense.

404 S.W.3d at 235.

Further, in applying *Miller,* the *Hart* court held that the constitutional defect in Hart's sentence for first-degree murder was not its length or the fact that he would not be eligible for parole. *Id.* at 238. "Hart's sentence of life without parole violates the Eighth Amendment because—and only because—it was imposed without any opportunity for the sentencer to consider whether this punishment is just and appropriate in light of Hart's age, maturity and the other factors discussed in *Miller.*" *Id.* The court continued that the "case must be remanded for re-sentencing using a process by which the sentencer can conduct the individualized analysis required by *Miller* and, on that basis, determine whether life without parole is a just and appropriate sentence for Hart under all the circumstances." *Id.* at 238–39. Because Olivas's sentence of LWOP for first-degree murder was imposed in a manner that violated the Eighth Amendment, he must be re-sentenced using the procedure described in *Miller* as interpreted in *Hart.*

With regard to Olivas's waiver of jury sentencing, our Supreme Court held in both *Hart* and *Nathan* that because the *Miller* holding requires additional analysis before a juvenile can be sentenced to LWOP, it is "not reasonable to assume that [defendant] ever considered whether he would prefer the judge or jury to make the new-- and qualitatively different-- decision now required by *Miller.*" *Hart*, 404 S.W.3d at 240. Therefore, the

12

court reasoned that the defendant was not bound by his previous waiver of jury sentencing. *Id.*

In applying the *Hart* and *Nathan* holdings to the case at bar, Olivas's waiver of jury sentencing may not be enforced on remand. *Id.* at 240; *see also Nathan*, 404 S.W.3d at 271. If Olivas does not choose to waive jury sentencing on remand, the State will bear the burden of persuading the jury beyond a reasonable doubt that a sentence of life without parole is just and reasonable under all the circumstances. *Hart,* 404 S.W.3d at 241. After the parties present their evidence and arguments, and before the jury begins deliberating, the trial court will instruct the jury that "if it is not persuaded that life without parole is a just and appropriate sentence under all the circumstances of the case, additional instructions concerning applicable punishments will be given at that time." *Id.* at 242. Thereafter, "the [jury] must determine whether life without parole is a just and appropriate sentence for the first degree murder [the defendant] committed." *Id.* If the State meets its burden of persuading the jury beyond a reasonable doubt, then the trial court must impose the sentence. *Id.*

In *State v. Nathan*, the companion case to *Hart*, our Supreme Court outlined the procedure in the event that the sentencer (judge or jury) finds that LWOP is *not* a just and appropriate sentence:

> If, on remand, the trial court is required to vacate the jury's verdict that [Olivas] is guilty of first-degree murder on the ground that section 565.020 is void, the trial court also must vacate the jury's finding that [Olivas] is guilty of the armed criminal action charge predicated on his being found guilty of first-degree murder. The trial court then must enter a new finding that [Olivas] is guilty of armed criminal action in connection with his guilt on the second-degree murder charge. [Olivas] then will be

13

sentenced for the new armed criminal action charge at the same time and in the same manner as he is sentenced for the new second-degree murder charge.

*Nathan*, 404 S.W.3d at 271 n.11.

To the extent Point Two asserts error based upon the Eighth Amendment, we agree and, pursuant to the direction of *Hart*, this case is remanded for Olivas to be re-sentenced on both offenses under procedures consistent with this opinion.

## CONCLUSION

For the reasons set forth above, this case is remanded for Olivas to be re-sentenced on both offenses under procedures consistent with this opinion.  In all other respects, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

14