

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                )
                                  )
    Plaintiff-Respondent,         )
                                  )
v.                                )    No. SD35849
                                  )
BRANDY BROOKE SHADDOX,            )    **Filed:  April 14, 2020**
                                  )
    Defendant-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Jack A.L. Goodman

**<u>AFFIRMED</u>**

A jury convicted Brandy Brooke Shaddox ("Defendant") of murder in the first degree (count 1), assault in the first degree (count 2), armed criminal action (count 3), kidnapping (count 4), and forgery (count 6).[1]  Defendant asserts two points on appeal: (1) there was insufficient evidence that she coolly thought about killing Larry Adams ("Victim") before she did it; and (2) the trial court erred in "overruling defense counsel's objection to testimony that [Defendant]'s statements 'I got a tear drop' and 'I got my wings' meant that she had killed someone" . . . "in that the testimony was speculative and more prejudicial than probative."  Finding no merit in either claim, we affirm.

---

[1] *See* sections 565.020, 565.050, 571.015, 565.110, and 570.090.  Count 5, a felonious restraint charge, was dismissed by the State during the course of the trial.  The State did not seek the death penalty.  Unless otherwise noted, all statutory references are to RSMo 2000.

## The Evidence

We recite the evidence, and the reasonable inferences that may be drawn from it, in the light most favorable to the verdict. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). We mention contrary evidence and inferences only when necessary to provide context for Defendant's claims.

Victim was 72 years old at the time of his death. He spent about the last fifteen of those years living in a trailer in Hollister. Defendant (who was 38 years old at the time of trial) met Victim when she walked into his trailer park after having car trouble. One week later, Defendant moved in with Victim, and they began having "a sexual[-]nature friendship."

Defendant testified that she had been living with Victim for about a month when she noticed "things [in Victim's trailer] that were in another house that [she] had lived in." Victim denied that the items belonged to Defendant. Defendant nonetheless testified that she felt afraid. When she told several people, including Mark Bailey ("Mr. Bailey"), about her concerns, they agreed to help Defendant move out.

Just prior to Victim's death, Defendant put a large blue tarp in her car and went with Mr. Bailey to purchase a Taser and some zip ties. On November 7, 2015, Defendant called both Mr. Bailey and Victim and asked them to pick her up at A-1 Storage, claiming that her car had run out of gas. Victim arrived in his truck with a can of gasoline and some cigarettes for Defendant. Defendant then "[t]ased [Victim] so he wouldn't try and block [her] from moving out." When the Taser did not disable Victim, Defendant tased him again, and they wrestled for possession of the Taser. That struggle

2

continued into Victim's truck, where Defendant located a flashlight and hit Victim in the head with it several times.

Defendant, with or without the assistance of Mr. Bailey, zip-tied Victim's wrists and ankles. Defendant then drove Victim's truck to her car, which she had parked in a church parking lot, and she transferred Victim into the back of her car. With Mr. Bailey following in his vehicle, she then drove to an abandoned house in a remote location. Defendant left Victim in the back of her car -- still bound with zip ties and without access to food or water -- and she and Mr. Bailey drove away in his car. The following day, Defendant went back to check on Victim. Victim, still bound, was alive, and he asked Defendant what she was going to do. Defendant said that she was "going to go get help."

Defendant did not get help, and Victim's dead body was found seven days later, on November 14, 2015, still bound hand-and-foot in the back of Defendant's car. The mechanism of Defendant's death was hypothermia that resulted from his exposure to the cold.

The jury found Defendant guilty on all counts, and the trial court sentenced her to serve consecutive terms of: life imprisonment without the possibility of parole on count 1, life imprisonment on count 2, twenty years on count 3, fifteen years on count 4, and four years on count 6. This appeal timely followed. For ease of analysis, we review Defendant's second point first.

## Analysis

### *Point 2 – Permitting Officers to Define Slang Terms*

Point 2 claims the trial court abused its discretion in overruling defense counsel's objections to testimony from law enforcement officers that Defendant's statements that

3

she "got a teardrop" and "got [her] wings" meant that she had killed someone because such statements were speculative and more prejudicial than probative. We disagree.

> "'The standard of review for the admission of evidence is abuse of discretion.'" *State v. Patrick*, 566 S.W.3d 245, 253 (Mo. App. W.D. 2019) (quoting *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011)). "The trial court has broad discretion in choosing to admit evidence[,] and we will not disturb this discretion unless it is against the logic of the circumstances and so unreasonable as to show a lack of careful consideration." *Id.* (citing *State v. Freeman*, 269 S.W.3d 422, 426 (Mo. banc 2008)). "'For evidentiary error to cause reversal, prejudice must be demonstrated.'" *Id*. (quoting *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009)). "'Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.'" *Id.* (quoting *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006)).

**State v. Boyd**, No. WD 81879, 2019 WL 6703894, at *7 (Mo. App. W.D. Dec. 10, 2019).

Defendant's friend, Martin Carrington ("Mr. Carrington"), testified that in early November 2015, he asked Defendant if she could take him to the grocery store. Defendant picked him up in a blue pickup truck – not the vehicle she usually drove – and Mr. Carrington noticed blood smears on the passenger door. Defendant was distraught and "was talking about how she earned tear drops and wings and stuff like that." Mr. Carrington did not know what that meant.

The State then introduced evidence from two law enforcement officers that tear drops represent the number of times that a person has killed someone. One of the officers also testified that "getting your wings" meant the same thing.

Defendant argues that, assuming the testimony from the law enforcement officers was relevant, it had no probative value because even if Defendant made those statements, there was no evidence that Defendant knew the meaning of the terms she was using.

4

We reject that dubious proposition and agree with the State that a reasonable juror could find that Defendant knew what her words meant.[2]  And as the terms "getting your wings" and earning "tear drops" are slang phrases that might not have been within the understanding of the average juror, the trial court did not abuse its discretion in permitting the officers to define them.[3]  *See **State v. Hutson***, 487 S.W.3d 100, 108 (Mo. App. W.D. 2016) (witness who had familiarity with slang term could testify to its meaning).

Point 2 is denied.

*Point 1 – Sufficient Evidence of Deliberation*

Defendant's first point claims, "The trial court erred in overruling [her] motion for judgment of acquittal at the close of the [S]tate's case[4] as to the count of murder in the first degree" because there was insufficient evidence to convict her of first-degree murder in that the evidence failed to prove that Defendant caused Victim's death after deliberation.  We disagree.

> "Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016).  An appellate court considers all evidence in the light most favorable to the verdict, and grants the State all reasonable inferences.  *Id*.  Contrary evidence and inferences are disregarded.  *Id*. "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)

---

[2] Defendant testified that she did not make these statements, but the jury was free to disbelieve her self-serving testimony, and we must therefore disregard it on appeal.  *See **Lammers***, 479 S.W.3d at 630.

[3] We note that Defendant neither argues that the officers improperly defined the terms, nor that the phrases do not mean what the officers said they meant.

[4] On appeal, we review the sufficiency of the evidence to support a criminal conviction on the merits without regard to whether or how that issue was raised at trial.  ***State v. Claycomb***, 470 S.W.3d 358, 362 (Mo. banc 2015).

(internal quotation marks omitted); *see State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010).

**State v. Abel**, 590 S.W.3d 872, 874 (Mo. App. S.D. 2019).

Count 1 alleged that Defendant committed murder in the first degree when she acted with one or more persons and, with deliberation, "knowingly caused the death of [Victim] by tying his hands and feet and abandoning him without adequate shelter, clothing, or medical treatment for head injuries."

> "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1. "The crime of first degree murder consists of three elements: (1) knowingly (2) causing the death of another person (3) after deliberation upon the matter." *State v. Hudson*, 154 S.W.3d 426, 429 (Mo. App. S.D. 2005) (internal quotation and citation omitted).

**State v. Hooper**, 552 S.W.3d 123, 134 (Mo. App. S.D. 2018).

Defendant's specific argument is that Victim "died of hypothermia; a result she may have contemplated and even recklessly caused – but insufficient evidence was adduced to establish that [Defendant] deliberated upon that result."

> "Deliberation means cool reflection for any length of time no matter how brief." § 565.002(3). "Deliberation is not a question of time—an instant is sufficient-and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." *State v. Nathan,* 404 S.W.3d 253, 266 (Mo. banc 2013). "Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *Id.* Further, deliberation need only be momentary. [*Frazier,* 404 S.W.3d at 414] (citation omitted).

> > "Evidence of multiple stab wounds, repeated blows, the failure to seek medical help, a prolonged struggle, ample opportunity to stop the attack, or that the defendant brooded over his actions before taking them can support an inference of deliberation." [*Id.*] (citations omitted). "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." *State v. Johnston,* 957 S.W.2d 734, 747 (Mo. banc 1997) (internal citations omitted).

6

*State v. Olivas*, 431 S.W.3d 575, 580 (Mo. App. W.D. 2014). In sum, "the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *Nathan*, 404 S.W.3d at 266.

Here, before her attack on Victim, Defendant purchased zip ties and a Taser, and she put a large tarp in the back of her car. Later that same day, Defendant lured Victim to her car by calling him (and Mr. Bailey) and telling Victim to come help her because she had run out of gas. She then used the Taser and a flashlight to assault Victim, bound him with the zip ties, drove him to an abandoned house in another town, and left him there -- zip-tied and partially concealed by a tarp.

Evidence that a defendant did or said certain things prior to the act in order to facilitate the crime, also known as "planning evidence," is conduct relevant to deliberation. *State v. Miller*, 220 S.W.3d 862, 868 (Mo. App. W.D. 2007) (citing *State v. Roberts*, 948 S.W.2d 577, 589 (Mo. banc 1997)). And "[e]vidence of a prolonged struggle, multiple wounds, or repeated blows may ... support an inference of deliberation." *State v. Tisius*, 92 S.W.3d 751, 764 (Mo. banc 2002) (quoting *State v. Ervin*, 979 S.W.2d 149, 159 (Mo. banc 1998)).

When Defendant checked on Victim the day after she left him at the abandoned house, she did not free him. She did not contact the authorities. She did not give him food or water or seek any medical help for him. Instead, she left Victim as he she found him – tied-up in her car without access to food or water – and did not return. "[F]ailure to seek medical help for a victim strengthens the inference that the defendant deliberated." *State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004).

7

Whether Defendant deliberated upon killing Victim specifically by exposure to the cold is of no import.  The jury could reasonably infer that Defendant knew that Victim would inevitably succumb to *something* – whether exposure to the elements, lack of water, or his injuries – if she simply left.  The evidence outlined above was sufficient to allow a reasonable juror to find beyond a reasonable doubt that Defendant acted "deliberately, consciously and not reflexively."  ***Nathan****,* 404 S.W.3d at 266.

Point 1 is also denied, and the judgment is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS