**STATE of Missouri, Respondent,**

v.

**Leonard A. PAYNE, Appellant.**

**Nos. WD 62104, WD 62231.**

Missouri Court of Appeals, Western District.

April 27, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 2004.

also charged and tried for another at-tempted robbery that occurred during that spree, but the trial court granted a judgment of acquittal on that charge. No charges were filed in relation to the first of the four robberies, a "snatch and run" conducted at a local Hypermart.

In his sole point, Payne asserts that the trial court erred by allowing Sean King, another participant in the robberies, to testify about the Hypermart "snatch and run." We find that the trial court did not abuse its discretion in allowing King to give such testimony because the evidence was admissible to provide the jury with a complete and coherent picture of the events that transpired. The evidence was logically relevant to whether Payne was guilty of the three other robberies for which he was charged, and its probative value was not outweighed by its prejudicial effect.

### Facts and Procedural History

A jury convicted Leonard Payne of second-degree felony murder, first-degree attempted robbery, first-degree assault, and three related counts of armed criminal action relating to two of the robberies. Payne was acquitted of two additional charges, first-degree robbery and the related armed criminal action relating to the fourth robbery.

Payne's convictions were based on a lengthy series of events that began on the morning of September 30, 2000. Between 6:30 a.m. and 7:00 a.m., Leonard Payne arrived at Sean King's house where King and Montino Walker had been awake all night. The three men smoked marijuana and took Valium before leaving on a joy ride. Walker and King left in Walker's car and Payne went alone in his own car. Soon after the three men left King's house

John Maurice Schilmoeller, Appellate Defender Office, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Kaye Spillars and Andrea Mazza Follett, Office of Attorney General, Jefferson City, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

Leonard Payne appeals his convictions for second-degree felony murder in violation of section 565.021 RSMo 2000,[1] first-degree attempted robbery in violation of sections 564.011 and 569.020, first-degree assault in violation of section 565.050, and three related counts of armed criminal action in violation of section 571.015. The convictions stemmed from two attempted robberies committed as part of a daylong crime spree. The crime spree actually consisted of four robberies. Payne was

---

1. All statutory citations are to RSMo 2000, unless otherwise indicated.

they decided to conduct a "snatch and run." King and Payne entered a Hypermart near Bannister Mall and proceeded to the jewelry counter. Payne asked to see a ring, and the clerk handed it to him. He put it on his finger, gave it back to the clerk, and asked for another ring. This time when he put the ring on his finger, he and King ran out of the store. King got in Walker's car, and Payne got back in his own car.

The three men left Hypermart and drove several miles to Extreme Audio on Wornall Road, which was still closed. While waiting for the store to open, King stole a minivan, and Payne and Walker left their cars and got in the minivan with King. The three men returned to Extreme Audio, which was now open. Payne and King entered the store together, and Payne asked the store's owner, Hossein Zarjam, to show him something in the display case. Payne noticed a security monitor above the display case, pulled out a gun, and fired at the monitor.

Meanwhile, upon entering the store and seeing Payne fire his gun, Walker left and returned with another gun. He went up to Zarjam who was lying on the floor behind the counter, pulled him up by his collar, and led him toward the front door where he fatally shot him. Payne, Walker, and King ran out of the store without actually taking anything, but they had not finished their crime spree. They returned to their cars, abandoned the stolen van, and headed toward Ward Parkway Mall.

Payne and King entered the mall intending to commit another "snatch and run," but they were not sure which store they wanted to rob so they walked around the mall a few times. After passing a jewelry counter set up in the middle of the mall the first time around, Payne and King returned and asked the clerk, Nahal Esmaeili, to show them an item in the display

case. Esmaeili refused because she found the two men suspicious. To keep from opening the case, Esmaeili lied and told Payne and King she did not have the key. Payne pulled a gun on Esmaeili. Fearing a repeat of the events that occurred at Extreme Audio, King began walking away from the counter and toward the mall's exit. Payne came running past King, and the two men left the mall, once again, without taking anything. They sped away in the same manner as before with King in Walker's car and Payne driving his own vehicle.

At this point, Walker had to return the car he was driving to his girlfriend so he took King back to his house. Ten to fifteen minutes after returning home, Payne showed up at King's house, and the two decided to commit yet another "snatch and run." They went to The Jones Store located in Bannister Mall and began moving merchandise around so that it would be easier to grab and run out of the store. A loss prevention security guard noticed their suspicious activity, and when King ran out of the store carrying seven or eight coats, three security guards stopped him. While the guards had King down on the ground handcuffing him, Payne walked up, pointed a gun at them, and ordered that they let King go. The guards freed King, and he and Payne ran out of the store, yet again, without actually taking any merchandise.

When the two reached Payne's car, they were unable to get it started. They ran across Interstate 435 into the woods where the police apprehended them a short time later.

On appeal, the State originally asserted error in relation to Payne's acquittal on the first-degree robbery and armed criminal action charges that were filed in connection with the events that occurred at The Jones Store. The State voluntarily dismissed this appeal so that Payne's

cross-appeal is all that remains to be decided. The cross-appeal concerns the admission of testimony relaying to the jury the events that transpired at Hypermart. Payne was not charged with an offense in relation to these events, and he argues that the testimony was, therefore, inadmissible as evidence of prior uncharged crimes.

## Standard of Review

In deciding whether to admit or exclude evidence, the trial court is vested with broad discretion. *State v. Pennington*, 24 S.W.3d 185, 189 (Mo.App.2000) (citation omitted). We will not overturn such a decision unless we find that the trial court clearly abused its discretion, and the abuse resulted in prejudice to the defendant. *Id.*

## Discussion

■ " 'Criminal defendants have the right to be tried only for the offense for which they are charged.' " *State v. Skillicorn*, 944 S.W.2d 877, 886 (Mo. banc 1997) (quoting *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989)). Pursuant to this right, a general rule has developed that evidence of prior uncharged crimes is inadmissible to show the defendant was predisposed to commit similar crimes. *Id.* (citation omitted). Such evidence is admissible, however, if it is both logically and legally relevant. *Pennington*, 24 S.W.3d at 189. Evidence of uncharged crimes is logically relevant if it carries a legitimate likelihood of proving the defendant guilty of the charged crime. *Id.* The same evidence is legally relevant if its prejudicial effect is outweighed by its probative value. *Id.*

■ The courts have noted several specific exceptions to the general rule finding that evidence of uncharged crimes will be admissible "if it 'tends to establish (1) motive, (2) intent, (3) identity, (4) the absence of mistake or accident, (5) or a common

plan or scheme.' " *Id.* at 190 (quoting *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994)). An additional exception provides that "evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admitted to present 'a complete and coherent picture of the events that transpired.' " *Id.* (citation omitted).

■ Sean King agreed to testify against Payne as part of a plea agreement. Over objection, the trial court allowed King to testify about the events that transpired at Hypermart, an incident for which Payne was not charged with any crime. Payne argues that this evidence was neither logically nor legally relevant and that he was prejudiced as a result of its admission. The State counters that the evidence fell under one of the recognized exceptions to the general rule. We agree with the State and find that King's testimony about the Hypermart incident was admissible to provide a complete and coherent picture of the events that occurred that day.

In *Pennington*, the court emphasized that the rationale behind all of the exceptions is to admit evidence that will legitimately help prove the defendant's guilt as to the charged crime. *Id.* As such, evidence of prior uncharged crimes has been admitted where it is part of the *res gestae* of the charged crime and where it is part of the sequence of events surrounding the charged crime. *Id.* at 191 (citations omitted).

The *Pennington* court went on to find that the facts of that case did not fall under the complete and coherent picture exception. The stark contrast between those facts and the facts we are faced with here only serves to reinforce the admissibility of King's testimony. *See Id.* at 187–88. There, the State tried to convince the court that a witness should be allowed to testify about having seen the defendant

commit the same crime he was charged with on two previous and separate occasions. *Id.* at 190. The court found that the complete and coherent picture exception was not met because "Pennington's prior uncharged crimes were not part of the circumstances of the offense charged or part of the sequence of events surrounding the offense charged." *Id.* at 191.

In this case, however, the prior uncharged crime that occurred at Hypermart was both part of the circumstances of the offense charged and part of the sequence of events. At each of the four locations visited by Payne, King, and Walker during their daylong crime spree, the main intent was to commit a "snatch and run." The first of these four events occurred during the early morning hours at Hypermart. The rest of the day was consumed by the three men's string of crime that they perpetrated upon Extreme Audio, Bannister Mall, and finally, The Jones Store. Clearly, the four events that began with the Hypermart incident were a continuous sequence of events closely related in nature, scope, and time. Nor did the prejudicial effect outweigh the probative value of the evidence. The objected to evidence was highly probative of Payne's guilt and necessary to provide the jury with a complete understanding of the virtually unbroken chain of events that occurred that day.

As a result, we find that the trial court's decision to overrule defense counsel's objection and allow King to testify about the prior uncharged crime that occurred at Hypermart was not an abuse of discretion.

The judgment and convictions are affirmed.

ROBERT G. ULRICH, Judge, and JAMES M. SMART, JR., Judge, concur.