**STATE of Missouri, Respondent,**

v.

**Ines LETICA, Appellant.**

**No. SC 91849.**

Supreme Court of Missouri,
En Banc.

Dec. 20, 2011.

Rehearing Denied Jan. 31, 2012.

Steven V. Stenger, Klar, Izsak & Stenger LLC, St. Louis, for Letica.

Timothy A. Blackwell, Attorney General's Office, Jefferson City, for State.

ZEL M. FISCHER, Judge.

Ines Letica was tried and found guilty by a jury of one count of first degree assault and one count of armed criminal action. The State made a reverse–*Batson*[1] challenge alleging that a venireperson was struck with a peremptory challenge on the basis of gender, race or ethnic origin. The circuit court erred when it ruled prematurely on the challenge and did not require the State to demonstrate that racial or gender discrimination was the motivating factor for the peremptory strike. However, this error, resulting in an otherwise qualified juror being empaneled, is harmless error under the facts presented in this case. Other questions on appeal relate to the sufficiency of the evidence as to Letica's convictions and plain error review for unpreserved issues involving Letica's sentencing—alleged prosecutorial misconduct during *voir dire* and in opening and closing arguments and as to whether the probative value of photographs admitted into evidence outweighed their prejudicial effect. This Court granted transfer after opinion by the court of appeals and, therefore, has jurisdiction over this appeal pursuant to article V, section 10, of the Missouri Constitution. The circuit court's judgment is affirmed.

### Facts

The facts, when viewed in the light most favorable to the verdict,[2] are as follows:

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

On December 7, 2007, Edmond Ibrahemi, originally from Serbia, went to a bar in St. Louis named Skala to meet a friend. The defendant, Ines Letica, approached Ibrahemi in the bathroom and stated that he wanted to talk outside. Ibrahemi had told Letica's cousin that he wanted Letica to leave him alone and that he did not want to fight with Letica. They knew each other and had previously engaged in two earlier arguments. They went out a back door. After a short verbal exchange, Letica cut Ibrahemi's throat and neck with a knife. Letica also cut Ibrahemi in the chin, chest, knee, and abdomen. Ibrahemi went back inside the bar and collapsed.

Ibrahemi's injuries would have been life-threatening without medical treatment. He was hospitalized for five days. The cut across the front of his neck went down to the Adam's apple and caused injury and swelling of the vocal cord. Two additional incisions were made on Ibrahemi as part of the treatment for his injuries: one for exploratory surgery and another to insert a chest tube. In total, Ibrahemi sustained 15 cuts and was placed on a respirator while in a medically induced coma for three to four days.

Letica was charged in St. Louis City with first degree assault in violation of § 565.050,[3] and armed criminal action in violation of § 571.015, for the attack of Ibrahemi.[4]

During *voir dire*, the following exchange took place:

[PROSECUTOR]: While I'm in the first row Miss Wiese, is that how you say your name?

VENIREPERSON WIESE: It's Wiese.

THE COURT: Would you stand for me please, ma'am? Thank you.

[PROSECUTOR]: It says here you work for Express Scripts; is that correct?

VENIREPERSON WIESE: Yes.

[PROSECUTOR]: And how long have you been doing that?

VENIREPERSON WIESE: Two years.

[PROSECUTOR]: Okay. Anything that you've heard so far that you believe that you could not be fair and impartial and follow the law?

2. *State v. Tisius*, 92 S.W.3d 751 (Mo. banc 2002).

3. All statutory references are to RSMo 2000, unless otherwise indicated.

4. Two mistrials have previously been granted. The first mistrial was declared by the circuit court February 25, 2009, after announcing that it would be unable to select 12 prospective jurors from the 48–person panel. A second jury trial lasting three days commenced March 22, 2010. A mistrial was declared March 25, 2010, after the jury informed the circuit court that it was deadlocked after deliberations.

Letica argues that the State's conduct during *voir dire* in the February 2009 proceeding was improper. Letica also argues that the circuit court's failure to sustain Letica's motions for judgment of acquittal both at the close of the State's evidence and motion for judgment of acquittal notwithstanding the verdict at the close of all evidence, during the March 2010 mistrial, violated his right to due process and right to a fair trial before an impartial jury.

"The retrial of the case before an appeal is taken waives any error that could have been alleged at that time. It is too late to complain after the second trial produces a different result." *Rogers v. Bond*, 839 S.W.2d 292, 293 (Mo. banc 1992). Any allegations of prosecutorial misconduct during or before the February 2009 and March 2010 mistrials are no longer cognizable. The circuit court declared a mistrial on both occasions and, as far as Letica's points on appeal rely on acts that were remedied by the circuit court's declaration of a mistrial and the subsequent trial, this Court shall not discuss them further.

VENIREPERSON WIESE: No.

[PROSECUTOR]: Okay. Thank you.

The State used peremptory challenges to strike five African–American females from the panel for which defense counsel raised *Batson* objections. After the State explained its reasoning for striking the five African–American females, the circuit court judge addressed defense counsel stating: "Okay. I think the burden flips to you ... to show somebody is similarly situated, does it not?" After defense counsel offered a similarly situated venireperson, the circuit court judge stated further:

No, but it's a peremptory challenge, which I understand it can be based solely on instinct unless the instinct is racially or gender pretextual. The question then is whether there is someone similarly situated where you can confirm for me that it's a pretextual basis.

The circuit court permitted all of the State's peremptory challenges.

Defense counsel then used peremptory challenges to strike four Caucasian females, including Wiese, from the panel. The State raised a reverse–*Batson* objection to striking the four Caucasian females, including Wiese.[5] The State argued that Wiese "didn't say anything" and noted that a number of the venirepersons struck through defense counsel's peremptory challenges were Caucasians. Defense counsel responded:

Miss Wiese I thought was young, she wore glasses, she's correct. She didn't really have much interaction with anyone. But I didn't get a good vibe, it was basically because she was young.

The following exchange then took place:

THE COURT: ... I think just young doesn't get it. And I have no notes that she said anything.

[THE PROSECUTOR]: And age is a protected class.

THE COURT: She works for Express Scripts, yes. I think she asked how long have you been there, she said three years maybe.

[DEFENSE COUNSEL]: Three or four years.

THE COURT: And that was it. So I'm going to sustain your [reverse–*Batson*] objection to Miss Wiese.

Therefore, Wiese served on the jury. At trial, Letica testified and claimed self-defense, alleging that Ibrahemi was the initial aggressor. Letica moved for a judgment of acquittal at the close of the State's case, and the circuit court overruled the motion. Letica moved for a judgment of acquittal at the close of all of the evidence, and the circuit court also overruled that motion.

The jury found Letica guilty of first degree assault and armed criminal action arising from the altercation between Letica and Ibrahemi. In accord with the jury verdict, the circuit court sentenced Letica to 15 years in the custody of the Missouri Department of Corrections on each count with the sentences to run concurrently.

## THE REVERSE–*BATSON* CHALLENGE

Letica argues that the circuit court erred in sustaining the State's reverse–*Batson* challenge regarding Wiese. Letica claims that the State failed to carry its burden of proving the defense counsel attempted to strike Wiese for unconstitutionally discriminatory reasons.

5. Defense counsel also used peremptory challenges to strike a Caucasian male and an African–American female.

## Standard of Review

A criminal defendant's equal protection rights are violated when the State exercises peremptory strikes to remove potential jurors from the venire panel solely because of their race or on the assumption that their race will disable them from considering the State's case. *Batson,* 476 U.S. at 94–100, 106 S.Ct. 1712. The *Batson* doctrine was extended to apply to discriminatory challenges to potential jurors based on gender alone. *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race. *State v. Marlowe,* 89 S.W.3d 464, 468 (Mo. banc 2002). The *Batson* doctrine has been further extended to challenges the State makes in response to a defendant's allegedly purposeful discrimination on the grounds of race, gender, or ethnic origin in the exercise of peremptory strikes. *State v. Chambers,* 234 S.W.3d 501, 507 n. 1 (Mo.App.2007); (citing *Georgia v. McCollum,* 505 U.S. 42, 48–55, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)). These challenges made by the State are known as reverse–*Batson* challenges.

In reviewing a circuit court's decision concerning a *Batson* or reverse–*Batson* challenge, a circuit court is accorded great deference because its findings of fact largely depend on its evaluation of credibility and demeanor. *State v. Bateman,* 318 S.W.3d 681, 687 (Mo. banc 2010). The court's findings of fact on a *Batson* or reverse–*Batson* challenge will be set aside only if they are clearly erroneous. *Id.* Clearly erroneous means the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.*

There are three steps in raising a *Batson* or reverse–*Batson* challenge: once the opponent of a peremptory challenge has made out a *prima facie* case of racial discrimination (step one); the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two); if a race-neutral explanation is tendered, the trial court then must decide whether the opponent of the strike has proven purposeful prohibited discrimination (step three). *Kesler–Ferguson v. Hy–Vee, Inc.,* 271 S.W.3d 556, 559 (Mo. banc 2008) (citing *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). "In determining pretext, the main consideration is the plausibility of the [striking party's] explanations in light of the totality of the facts and circumstances surrounding the case." *State v. Johnson,* 207 S.W.3d 24, 35 (Mo. banc 2006). "The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769.

## Analysis

The circuit court followed the first two steps. The State raised a reverse–*Batson* challenge after defense counsel used a peremptory strike on Wiese. Defense counsel claimed, as race- and gender-neutral reasons, that Wiese was young and that counsel did not get a "good vibe" from her. Even if the striking party's "hunch" regarding his or her perception of a particular juror is based on past experience, it is not unconstitutionally discriminatory if it is based on race- and gender-neutral factors. *State v. Smith,* 944 S.W.2d 901, 912 (Mo. banc 1997). The second step of this process does not demand an explanation that is persuasive, or even plausible. *Purkett,* 514 U.S. at 767–68, 115 S.Ct. 1769. "At this second step of the inquiry, the issue is the facial validity

of the [party's] explanation. Unless a discriminatory intent is inherent in the [party's] explanation, the reason offered will be deemed race-neutral." *Id.* (internal citations and quotations omitted). "It is not until the third step that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* If a race- and gender-neutral reason is given at the second step, the circuit court must make a credibility determination at the third step of the analysis to determine [6] whether the proffered reason for the strike was a valid reason or a mere pretext for discrimination. *Kesler–Ferguson* at 560.

 The circuit court erred as a matter of law by stepping in for the State, without requiring the State to show that the defense counsel's reasons for the peremptory strike were merely pretextual, and ruled on the issue without creating a proper record. The circuit court said that "young just doesn't get it. And I have no notes that she said anything [else]." The State made no showing for the record that defense counsel's strike was based merely on pretext, short of agreeing with the circuit court and asserting that "age is a protected class." Age is a race- and gender-neutral factor and may properly be asserted as a defense to a *Batson* or reverse–*Batson* challenge. *Smith*, 944 S.W.2d at 912. Had the circuit court proceeded to step three and required the State to meet its burden of demonstrating the unconstitutionally pretextual reason for defense counsel's strike of Wiese, the reasons stated above may have been properly taken into account in its ruling.

Here, the circuit court did not proceed to step three and, in failing to do so, relieved the State of any burden of persuasion as the opponent of the strike.

Although great deference is to be given to the circuit court's factual determinations, here the circuit court misapplied the law when it made its ruling without requiring the State to even offer a showing on the record that racial or gender discrimination was the motivating factor for Letica's challenge.

**Harmless Error**

 Peremptory strikes are statutory, granted pursuant to § 494.480, and are not required by the Missouri Constitution. *State v. Hall*, 955 S.W.2d 198, 204 (Mo. banc 1997). Similarly, there is no federal constitutional right to peremptory challenges. *Rivera v. Illinois*, 556 U.S. 148, 129 S.Ct. 1446, 1450, 173 L.Ed.2d 320 (2009). "States may withhold peremptory challenges altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." *Id.* (internal citations and quotations omitted). State law controls both the existence and exercise of peremptory challenges and the consequences of an erroneous denial of such a challenge. *Id.* If there has been no federal constitutional violation, "[s]tates are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se* " or whether "the error could rank as harmless under state law." *Id.* at 1546.

This Court holds that the mistaken denial of a peremptory challenge in this case is harmless error under these facts. Here, there was a peremptory strike that was denied due to the circuit court's failure to

---

6. This determination by the trial court is made considering the totality of all relevant factors, and appellate review of the determination recognizes that the trial court is free to believe or disbelieve an alleged race- and gender-neutral explanation as mere pretext for discrimination. *Kesler–Ferguson* at 560.

follow the three steps required by law. While the defense counsel has a statutory right to use a peremptory challenge to strike a juror for non-discriminatory reasons, the erroneous denial of such a challenge merely resulted in the empaneling of an otherwise-qualified juror. The issue then becomes whether prejudice is presumed or whether Letica must demonstrate prejudice to be entitled to a new trial.

In *Strong v. State*, this Court held that counsel's failure to raise a *Batson* objection, where a criminal defendant could not show that an unqualified person served on the jury that convicted him, did not amount to a structural defect that entitled him to a presumption of prejudice. 263 S.W.3d 636, 648 (Mo. banc 2008). On the other hand, "[f]ailure to strike a juror [who] is *unfit* to serve because of such an improper predisposition is structural error." *Anderson v. State*, 196 S.W.3d 28, 40 (Mo. banc 2006) (emphasis added). Here, Wiese was qualified to serve on the jury and the record supports a determination she could remain fair and impartial. Letica does not contend, nor has he demonstrated, that an unqualified person served on the jury that convicted him. Letica, therefore, has failed to demonstrate that he was prejudiced by Wiese serving on his jury.

This Court finds that the circuit court's erroneous denial of Letica's peremptory challenge constituted a harmless error under the facts presented in this case.

## SUFFICIENCY OF THE EVIDENCE

Letica argues that the evidence was insufficient to establish that he attempted to kill or knowingly caused or attempted to cause serious physical injury to Ibrahemi and to establish that he knowingly did so using the assistance or aid of a dangerous instrument. Letica argues that the circuit court erred by overruling his motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, his motion for a new trial.

## Standard of Review

This Court's review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Schroeder*, 330 S.W.3d 468, 471–72 (Mo. banc 2011). In deciding whether the evidence is sufficient to convict a defendant of a particular offense, this Court considers the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregards all inferences to the contrary. *State v. Biggs*, 333 S.W.3d 472, 480 (Mo. banc 2011).

## Analysis

Letica was found guilty of the crime of assault in the first degree. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person. Section 565.050.1. A person acts knowingly with "respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." Section 562.016.3. Direct proof of the required mental state is seldom available, and such intent is usually inferred from circumstantial evidence. *State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983).

Letica argues that testimony at trial was inconclusive as to which party was the initial aggressor and that the State failed to sufficiently prove Ibrahemi's injuries were the result of Letica's attempt to kill or cause serious physical injury. This argument fails to recognize

the jury could have disregarded Letica's evidence and testimony and found sufficient evidence from which to convict Letica of the crime of assault in the first degree. It is the job of the jury to determine the credibility of witnesses, resolve conflicts in testimony, and weigh evidence. *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010). Here, the jury was well within its province to reject Letica's claim of self-defense. The number of Ibrahemi's wounds and their severity, combined with Ibrahemi's testimony, provided sufficient evidence for a reasonable juror to conclude that Letica attempted to kill or knowingly caused serious physical injury to Ibrahemi and that he knowingly did so using the assistance or aid of a dangerous instrument.

## PLAIN ERROR REVIEW

■ Letica argues that the circuit court abused its discretion when it sentenced him to two 15 year sentences to run concurrently. However, Letica did not properly preserve the issue for appeal because he failed to object at the sentencing hearing, giving the trial court a chance to elaborate on, or rule on, the objection. In addition, Letica complains of three acts by the State during *voir dire* and at trial that he argues were enough to sway the judgment of the jurors. Letica claims that the State conducted an improper *voir dire* and inappropriately characterized the victim's wounds as "stabbings" during opening and closing arguments. Letica did not make any objection to either the State's *voir dire* questioning or statements during trial that he now wishes this Court to review. Letica also complains that the circuit court erred in admitting exhibits 18, 20, and 21, which are photographs of Ibrahemi's injuries taken after he received treatment.

### Standard of Review

■ Any issue that was not preserved at trial can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error. *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Chaney*, 967 S.W.2d 47, 59 (Mo. banc 1998) (internal quotations and citations omitted). "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 29.12(b).

### Sentencing

■ Letica complains that the two concurrent 15 year sentences are based on rationale devoid of the careful consideration required and that sentences based on "one year for each stab wound" is an arbitrary legal standard. Being sentenced to a punishment greater than the maximum sentence for an offense would constitute plain error resulting in manifest injustice. *Severe*, 307 S.W.3d at 642. However, Letica was sentenced within the range of punishment prescribed by statute.

■ Letica was convicted of the class A felony of assault in the first degree. The authorized term of imprisonment for a class A felony is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." Section 558.011.1(1), RSMo Supp.2007. Letica was also convicted of the unclassified felony of armed criminal action. A person convicted of armed criminal action shall be punished by a term of imprisonment of "not less than three years" and "shall be in addition to any punishment provided by the law for the crime committed by, with, or through

the use, assistance, or aid of a dangerous instrument or deadly weapon."[7] Section 571.015.1. Letica's sentences were well within the range prescribed by the applicable statutes and do not constitute plain error.

### Prosecutorial Misconduct

Letica complains that the State presented the venire panel with a hypothetical situation in which the panel members were to imagine themselves as victims to a completely unrelated crime,[8] and then asked them if they would need anything more than the victim's testimony to convict. Using completely unrelated hypotheticals during *voir dire* to test potential juror bias does not rise to the level of manifest injustice constituting plain error. *See State v. Gray*, 887 S.W.2d 369, 379 (Mo. banc 1994).

Letica also complains that the State mischaracterized to the jury that all of the wounds sustained by Ibrahemi were "stabbings," when in fact some of the 15 cuts were superficial and some were deep wounds. Webster's dictionary defines "stabbing" as (1) "to wound by the thrust of a pointed instrument," (2) "to pierce with or as if with a pointed weapon" and (3) "to puncture." Webster's Third New International Dictionary (1976). The prosecutor's statement does not rise to the level of manifest injustice constituting plain error.

In addition, Letica alleges that the State, in its closing argument, misstated the law regarding the difference between first degree assault and second degree assault by claiming that the alleged crime was not committed in sudden passion "because this is not what a reasonable person would do." The circuit court instructed the jury properly as to sudden passion by charging it to consider whether Letica's actions were caused by, or arose out of, provocation by Ibrahemi. Because the jury had the proper instruction to guide it when considering its verdict, the prosecutor's statement did not rise to the level of manifest injustice constituting plain error. *Gray*, 887 S.W.2d at 379.

### Photographs Admitted Into Evidence

At trial, Letica objected to the photographs admitted into evidence on the grounds that the photographs were cumulative. On appeal, Letica argues that the probative value of the photographs is outweighed by their prejudicial effect. "A party is not permitted to advance on appeal an objection different from that stated at trial." *Nelson v. Waxman*, 9 S.W.3d 601, 605 (Mo. banc 2000). The cumulative evidence issue has been abandoned, and whether the probative value of the photographs outweighs their prejudice shall be reviewed for plain error. *See id.* That is because this Court does not consider "[a]llegations of error that are not briefed or

---

7. The armed criminal action statute contains a prescribed three-year minimum sentence. "The absence of a stated maximum penalty merely indicates a legislative intent that a defendant convicted of the offense may be sentenced to any term of years above the minimum, including life." *State v. Clark*, 197 S.W.3d 598, 602 (Mo. banc 2006) (holding that a 30 year sentence on a count of armed criminal action was within the original unenhanced range of punishment).

8. The State was testing to see whether any venireperson would be biased if the State did not put on any evidence at trial other than the victim's testimony. The State's hypothetical asked the venireperson to imagine that he or she was robbed while taking out his or her garbage and no one was there to see it, and the venireperson was to imagine himself or herself being the only witness to a crime. The State finished by saying: "So everybody can understand that there are crimes that occur where the only witness may be the victim...."

are not properly briefed on appeal" unless they are "errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence." Rule 30.20. This Court has discretion to consider plain error affecting substantial rights when "manifest injustice or miscarriage of justice has resulted therefrom." *Id.*

Here, the State had the burden of proving the seriousness of Ibrahemi's injuries and the photographs could have aided the jury in understanding the nature and location of the wounds. Even though the photographs were taken post-surgery, they were probative to corroborate Ibrahemi's testimony as to where he had been stabbed and how the attack had taken place, and their admission into evidence did not constitute manifest injustice or miscarriage of justice.

### Conclusion

The judgment is affirmed.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, STITH and PRICE, JJ., and ASEL, Sp.J., concur.

DRAPER, J., not participating.