

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, ) | |
| ) | |
| Respondent, ) | |
| ) | WD77727 |
| v. ) | |
| ) | OPINION FILED: |
| ) | March 1, 2016 |
| JEFFREY P. THOMPSON, ) | |
| ) | |
| Appellant. ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Edith L. Messina, Judge

**Before Division II:** Cynthia L. Martin, Presiding Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

Mr. Jeffrey Thompson ("Thompson") appeals the Judgment of the Circuit Court of

Jackson County, Missouri ("trial court"), finding him guilty, following a jury trial, of two counts

of robbery in the first degree and two counts of armed criminal action. Thompson raises three

points on appeal, in which he challenges the sufficiency of the evidence; the admission of certain

evidence; and the trial court's failure to declare a mistrial, *sua sponte*, because of the

prosecutor's alleged improper comments in opening statement and closing argument. We affirm.

**Facts and Procedural History**[1]

On February 1, 2013, Thompson was driving his girlfriend's 2013 black Chevrolet Impala rental car; Jeremy Williams and David West were passengers. Thompson knew that Williams had a 9-millimeter semiautomatic black gun tucked into the waist of his pants.

About 7:00 p.m. that evening, Christopher Munns, a Papa John's Pizza deliveryman, delivered a pizza at 4006 Oak in Kansas City, Missouri, and got back in his car. Thompson, Williams, and West saw Munns. Thompson dropped Williams and West off, and Williams and West approached Munns's car. One of them knocked on the driver's side door and said he needed to use Munns's phone because someone had been shot down the road. Munns was suspicious, so he rolled up his window and tried to put his car in drive. When he looked up, one of the men had pulled out a black 9-millimeter semiautomatic pistol. The man told Munns to open the door and hand him the money he had received from the delivery and his wallet. Munns complied. During this encounter and after Munns had been subdued by the gun pointed at him, the second man went through the front and back passenger doors to rummage around the inside of Munns's car. The two men (Williams and West) then ran off, and Thompson picked them up in a nearby alley. Munns drove back to Papa John's and called 911. Officers responded.

Later that evening, between 7:00 p.m. and 8:00 p.m., Thompson again dropped off Williams and West, and they approached Minh Nguyen from behind as he was attempting to lock the gate of his driveway at 2652 East 8th Street in Kansas City, Missouri. One man pointed a black gun at the back of Nguyen's head and said, "Don't scream and don't turn back, don't look back, and give me the money." The other man then searched Nguyen for Nguyen's

_____

[1] In an appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Ramirez*, 447 S.W.3d 792, 794 n.1 (Mo. App. W.D. 2014).

valuables. The men took Nguyen's cell phone and wallet. The men (Williams and West) ran off, and Thompson picked them up. Nguyen ran home, and his wife called the police.

Kansas City, Missouri, Patrol Officer Benjamin Lindsay responded to the dispatch of a reported robbery at Nguyen's residence. When Nguyen told Officer Lindsay that his cell phone had been stolen, Officer Lindsay used a cell phone locator app to track Nguyen's cell phone. The phone pinged to a location in Kansas City, Kansas, and Officer Lindsay broadcast the location of the phone.

Kansas City, Missouri, Patrol Officer Darren King responded to the location in a marked police car while on the lookout for a black vehicle occupied by three black males, as described by witnesses. Officer King saw a black vehicle traveling at a high rate of speed. The vehicle suddenly pulled to the curb, and three men exited the vehicle and ran. Officer King chased the driver of the vehicle and apprehended Thompson. Within ten minutes, officers found Williams hiding where Nguyen's phone had been tracked. He had Nguyen's wallet and phone, Munns's stolen property, and a loaded gun.

The next day, on February 2, 2013, Kansas City, Missouri, Detective Kristofer Oldham interviewed the three suspects who were being held at the Wyandotte County, Kansas, jail. Thompson waived his *Miranda* rights and gave Detective Oldham an audio-recorded statement. Thompson admitted dropping off and picking up Williams and West at the scene of five robberies or attempted robberies within an hour and a half. He said Williams had a gun the entire time, and Williams and West forcibly took money, a cell phone, bank cards, and wallets during the robberies. Thompson said he could have participated but felt good about himself because he had no involvement, and "I made it where I couldn't get involved. I dropped off."

Thompson was charged under Count I with the class A felony of robbery in the first degree and under Count II for the unclassified felony of armed criminal action for assisting Williams and West in the armed robbery of Munns. He was charged under Count III with the class A felony of robbery in the first degree and under Count IV for the unclassified felony of armed criminal action for assisting Williams and West in the armed robbery of Nguyen. At the close of the State's case, Thompson moved for a judgment of acquittal. The trial court denied the motion. Thompson presented no evidence and moved for a judgment of acquittal at the close of all the evidence. The trial court denied the motion. The jury found Thompson guilty as charged. Thompson then moved for a judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the post-verdict motion and sentenced Thompson as a prior and persistent offender to twenty years' imprisonment on the robbery counts and five years' imprisonment on the armed criminal action counts, with all sentences to run concurrently and concurrently to sentences previously imposed. Thompson appeals.

**Point I – Sufficiency of the Evidence**

In Point I, Thompson asserts a sufficiency-of-the-evidence challenge. The essence of Thompson's claim is that the State submitted a verdict director to the jury that unnecessarily heightened its burden of proving robbery in the first degree; but, in so doing, the State was obligated to prove the entirety of the heightened jury instruction—which Thompson alleges the State failed to do—even though the indictment properly charged Thompson with the statutory elements for robbery in the first degree, and there was sufficient evidence to support the crimes *as charged*. Specifically, Thompson argues:

> The State could have submitted verdict directors for [the first-degree robbery counts] that alleged in the third paragraph that Mr. Williams alone threatened the

4

immediate use of physical force against the victims.[2] But instead, the State alleged that both Mr. Williams and Mr. West threatened the use of physical force. By including the allegation that both men threatened the immediate use of physical force, the State assumed that added burden of proving beyond a reasonable doubt that both men did in fact threaten the immediate use of physical force. The State failed to do so.

**Standard of Review**

"An appellate court's review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014). "All evidence and inferences favorable to the State are accepted as true, and all evidence and inference to the contrary are rejected." *Id.* The question is not whether we believe that the evidence at trial established guilt beyond a reasonable doubt but, instead, whether, "in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation omitted).

Even more specifically, the Supreme Court of the United States has very recently addressed sufficiency challenges on appeal where the jury was instructed under a heightened jury instruction:

> [W]hen a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction.
>
> That conclusion flows from the nature of a court's task in evaluating a sufficiency-of-the-evidence challenge. Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have ever been submitted to the jury." *Burks v. United States*, 437 U.S. 1, 16, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (emphasis deleted). On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum

---

[2] On appeal, Thompson does not contest that Williams was armed with a deadly weapon and that Williams threatened the immediate use of physical force upon each of the victims.

5

that due process requires: a "meaningful opportunity to defend" against the charge against him and a jury finding of guilt "beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 314-315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The reviewing court considers only the "legal" question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, at 319, 99 S. Ct. 2781 (emphasis in original). That limited review does not intrude on the jury's role "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Ibid.*

A reviewing court's limited determination on sufficiency review thus does not rest on how the jury was instructed. When a jury finds guilt after being instructed on all elements of the charged crime plus one more element, the jury has made all the findings that due process requires. If a jury instruction requires the jury to find guilt on the elements of the charged crime, a defendant will have had a "meaningful opportunity to defend" against the charge. *Id.* at 314, 99 S. Ct. 2781. And if the jury instruction requires the jury to find those elements "beyond a reasonable doubt," the defendant has been accorded the procedure that this Court has required to protect the presumption of innocence. *Id.* at 314-315, 99 S. Ct. 2781. The Government's failure to introduce evidence of an additional element does not implicate the principles that sufficiency review protects. All that a defendant is entitled to on a sufficiency challenge is for the court to make a "legal" determination whether the evidence was strong enough to reach a jury at all. *Id.*, at 319, 99 S. Ct. 2781. The Government's failure to object to the heightened jury instruction thus does not affect the court's review for sufficiency of the evidence.

*Musacchio v. United States*, 136 S. Ct. 709, 715 (2016).

**Analysis**

Thompson's claim is that the evidence was insufficient to prove an element contained in the verdict directors: that Mr. West threatened the immediate use of physical force against Munns (Count I) or Nguyen (Count III). He contends that by including the allegation in the verdict directors that *both* Williams *and* West threatened the use of immediate physical force, the State assumed the added burden of proving that element beyond a reasonable doubt; but, argues Thompson, the State presented no evidence that West (as opposed to Williams) threatened the victims with the immediate use of physical force as the verdict director required. He further

6

asserts that because the State failed to present such evidence, his robbery convictions and the corresponding convictions for armed criminal action cannot stand.

The State charged Thompson with two counts of first-degree robbery. In Count I of its information in lieu of indictment, the State charged that Thompson:

> committed the **Class A Felony of Robbery in the First Degree** . . . in that on or about February 1, 2013, . . . the defendant, either acting alone or purposefully in concert with another, forcibly stole miscellaneous U.S. currency and a wallet in the possession of Christopher Munns, and in the course thereof another participant in the crime was armed with a deadly weapon.

Count III charged that Thompson:

> committed the **Class A Felony of Robbery in the First Degree** . . . in that on or about February 1, 2013, . . . the defendant acting alone or purposefully in concert with another forcibly stole a wallet and cellular phone in the possession of Minh Nguyen, and in the course thereof another participant in the crime was armed with a deadly weapon.

First-degree robbery is codified in section 569.020, which states in pertinent part:

> 1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
>
> > (1) Causes serious physical injury to any person; or
> >
> > (2) Is armed with a deadly weapon; or
> >
> > (3) Uses or threatens the immediate use of a dangerous instrument against any person; or
> >
> > (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

§ 569.020.1.

Thompson was charged in Counts II and IV with two counts of armed criminal action. Armed criminal action is codified in section 571.015, which provides that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action."

7

Thompson was charged with the crimes as an accomplice. Section 562.041.1(2) provides that a person is criminally responsible for the conduct of another when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Hence, "all persons who act in concert to commit a crime are equally guilty." *State v. Sistrunk*, 414 S.W.3d 592, 597 (Mo. App. E.D. 2013). *See also State v. Thomas*, 387 S.W.3d 432, 437 (Mo. App. W.D. 2013).

"[T]o make a submissible case of accomplice liability, the State must show that the defendant associated himself with the venture or participated in the crime in some manner, but the State need not show that the defendant personally committed every element of the crime." *Sistrunk*, 414 S.W.3d at 597 (internal quotation omitted). "Any evidence, either direct or circumstantial, demonstrating 'affirmative participation' in the crime charged and committed is sufficient to support a conviction." *Id.* Thus, the State was required to show that Thompson, "acting in concert with another, committed first-degree robbery with the assistance of a deadly weapon." *Id.*

Thompson admitted to Detective Oldham that he knew Williams was armed with a deadly weapon—a 9-millimeter semiautomatic handgun. He also admitted that, in the space of an hour and a half, he dropped Williams and West off and picked them up on five occasions during which they robbed individuals of money, a cell phone, bank cards, and wallets. A reasonable juror could have found that Thompson knew Williams was armed, that Williams and West robbed Munns and Nguyen, and that Thompson acted as a getaway driver. "[P]roof that the defendant knew the principal actor had robbed someone and that the defendant acted as a getaway driver is sufficient evidence of participation to support a finding of accomplice

8

liability." *State v. Jones*, 296 S.W.3d 506, 510 (Mo. App. E.D. 2009). Furthermore, Thompson's flight from police constituted evidence of guilt. *Id.*

Thompson's challenge to his convictions of armed criminal action (Counts II and IV) for the corresponding robbery counts (Counts I and III) is based on his contention that the State failed to present sufficient evidence as to the robbery counts. As we have just explained, the evidence was adequate to support his convictions for both counts of first-degree robbery. For the conviction for armed criminal action to be proper, the evidence had to support the additional finding that the robbery was committed "by or with or through the use or assistance or aid of a dangerous instrument." The evidence in this case supports the conclusion that both Munns and Nguyen were threatened with a 9-millimeter semiautomatic pistol during the robberies. That evidence is sufficient to support the additional element contained in the crime of armed criminal action. Thompson's acting as a getaway driver in an armed robbery is sufficient evidence of participation to support a finding of accomplice liability in committing first-degree robbery and armed criminal action. *Id.*

On appeal, Thompson does not contest that the information in lieu of indictment properly charged him with all the statutory elements for accomplice liability for robbery in the first degree and armed criminal action; nor does Thompson contest that the evidence is sufficient to establish that Thompson was acting in concert with another, Williams, to forcibly steal property from the subject victims, and that Thompson knew that Williams was armed with a deadly weapon to commit the crimes. Instead, Thompson argues that the State failed to prove the entirety of the heightened jury instructions—that, in addition to Williams threatening the immediate use of physical force to compel the victims to deliver up their property—the State was also obligated to

9

prove that the other purported criminal actor—West—also threatened the use of immediate physical force with the subject victims.

Specifically, Thompson argues that the State did not establish every requirement in the third paragraph of the verdict director in Instructions 8 and 10. The State submitted Instruction 8 as the verdict director for Count I, which charged Thompson as an accomplice in Williams and West's armed robbery of Munns:

> As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about February 1, 2013, in the County of Jackson, State of Missouri, Jeremy Williams and David West took U.S. Currency, and a wallet, which was property in the possession of Christopher Munns, and
>>
>> Second, that Jeremy Williams and David West did so for the purpose of withholding it from the owner permanently, and
>>
>> Third, that Jeremy Williams and David West in doing so threatened the immediate use of physical force on or against Christopher Munns for the purpose of forcing Christopher Munns to deliver up the property, and
>>
>> Fourth, that in the course of taking the property Jeremy Williams was armed with a deadly weapon,
>
> then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>
>> Fifth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant aided or encouraged Jeremy Williams and David West in committing the offense,
>
> then you will find the defendant guilty under Count 1 of robbery in the first degree. . . .

The State submitted Instruction 10 as the verdict director for Count 3, which charged Thompson as an accomplice in Williams and West's armed robbery of Nyugen:

10

As to Count 3, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 1, 2013, in the County of Jackson, State of Missouri, Jeremy Williams and David West took a cellular phone, and a wallet, which was property in the possession of Minh Nguyen, and

Second, that Jeremy Williams and David West did so for the purpose of withholding it from the owner permanently, and

Third, that Jeremy Williams and David West in doing so threatened the immediate use of physical force on or against Minh Nguyen for the purpose of forcing Minh Nguyen to deliver up the property, and

Fourth, that in the course of taking the property Jeremy Williams was armed with a deadly weapon,

then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant aided or encouraged Jeremy Williams and David West in committing the offense,

then you will find the defendant guilty under Count 3 of robbery in the first degree. . . .

Thompson contends that because the State's verdict directing instructions included a requirement that the jury find that *both* Williams *and* West threatened the immediate use of physical force, the State assumed the burden of proving that assertion.[3]

This case is not appreciably distinguishable from *Musacchio*. In *Musacchio*, the defendant, Mr. Musacchio, was indicted under 18 U.S.C. § 1030(a)(2)(C), which made it a crime either (1) to obtain access to another's protected computer without authorization *or* (2) to obtain access to another's protected computer with authorization but then exceeding that authorization

---

[3] Thompson argues that Williams was the gun man and did all the "threatening" talking and that West merely served as the accomplice who "quietly" removed property from the victims. This, Thompson claims, establishes that West's conduct was not immediately threatening of physical harm. For reasons discussed *infra*, we disagree.

11

improperly. *Musacchio*, 136 S. Ct. at 713. At trial, the jury was instructed under a heightened instruction (not objected to by the Government) instructing the jury that § 1030(a)(2)(C) "makes it a crime for a person to intentionally access a computer without authorization *and* exceed authorized access." *Id.* at 714 (internal quotation omitted). The jury convicted Musacchio, but Musacchio challenged the conviction on appeal claiming that there was insufficient evidence to establish *both* that he had conspired to access the subject computer without authorization *and* with authorization but in a manner that exceeded such authorization. *Id.*

In rejecting Musacchio's sufficiency-of-the-evidence challenge, the United States Supreme Court noted that Musacchio did not contest that he had been properly charged with the statutory elements for conspiracy to obtain unauthorized computer access; Musacchio did not contest that the jury instructions included within the heightened instructions all of the elements necessary to convict him of the charged criminal offense; Musacchio did not contest that the jury instructions correctly instructed the jury on the Government's burden of proof—beyond a reasonable doubt; and Musacchio did not contest that the evidence was sufficient to convict him of the crime *as charged in the indictment*. *Id.* at 715. Under these circumstances, the Court rejected Musacchio's sufficiency challenge, concluding that where a jury has convicted under jury instructions that identify all (and more) of the evidence necessary to convict the defendant of the crime as charged, "the jury has made all the findings that due process requires." *Id.*

Here, Thompson does not contest on appeal that he was properly charged under the statutory elements for accomplice liability for robbery in the first degree and armed criminal action; likewise, Thompson does not contest that all (and more) of the evidence necessary to convict him *of the charged crimes* was included within the jury instructions from which the jury did, in fact, convict him. Thus, like *Musacchio*, Thompson's sufficiency challenge must fail.

Additionally, we note that Thompson is taking the third paragraph of each of the verdict directors out of context and, in so doing, Thompson is reading the jury instructions in a grammatical light most convenient for himself. But, read in context, the first paragraph of the verdict directors is describing how Williams and West, collectively, teamed up to take valuable possessions from the victims; paragraph two describes how Williams and West, collectively, teamed up to withhold this property from each of the victims permanently; paragraph three describes how Williams and West, collectively, teamed up to threaten the victims with immediate physical harm if the victims did not comply with their demands; and the fourth paragraph describes how, in the course of this tag team robbery, the tasks of the first three paragraphs were accomplished via the possession by Williams—not West—of a deadly weapon. No reasonable juror would conclude that the plain language of this group of paragraphs was intended to suggest in the third paragraph that both Williams and West possessed a gun and threatened immediate physical harm with such weapon; rather, the verdict directors were designed to describe how both Williams and West teamed up to accomplish all of the tasks of robbery itemized in the first three paragraphs. Clearly, that is exactly what happened.

Finally, when the evidence and inferences favorable to the State are accepted as true, the evidence supports a reasonable juror's conclusion that all elements have been satisfied—including *Thompson's reading* of the third element in each verdict director—and Thompson was guilty beyond a reasonable doubt.

"Missouri law no longer recognizes any distinction between principals and accessories; it is now the law that all persons who act in concert are equally guilty." *State v. Ward*, 473 S.W.3d 686, 691 (Mo. App. W.D. 2015) (citing *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000)). The focus of Missouri courts on committing "acts" that constitute a crime is upon whether the

13

"actor" has "affirmatively participated" in the "act" alleged to be a crime. *State v. Barker*, 442 S.W.3d 165, 169 (Mo. App. W.D. 2014). "[A]ll persons who act in concert to commit a crime are equally guilty." *State v. Thomas*, 387 S.W.3d 432, 437 (Mo. App. W.D. 2013) (citing *State v. Isa*, 850 S.W.2d 876, 898 (Mo. banc 1993)).

Here, acting in concert with Williams, West affirmatively participated in the "act" of threatening the immediate use of physical force to rob each of the victims. It cannot reasonably be said that either of the victims did not reasonably fear the immediate use of physical force from *either* Williams or West—whether by pulling a trigger on a gun or instructing a fellow criminal participant to pull the trigger—if the victims failed to permit West to relieve them of their personal valuable possessions. Thus, a reasonable juror certainly could have concluded that *both* Williams and West actively and affirmatively participated in the act of threatening the immediate use of physical force in perpetrating the robbery upon each of the victims.

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the verdict and rejecting all contrary evidence and inferences, the evidence is sufficient to support Thompson's criminal convictions under the verdict directing instructions submitted to and relied upon by the jury in arriving at its guilty verdict.

Point I is denied.

### Point II – Admission of Propensity Evidence

In Thompson's second point, he asserts that the trial court abused its discretion in admitting the redacted audio recording of Thompson's statement to the police. He contends that the tape contained inadmissible propensity evidence of three uncharged robberies.

14

**Standard of Review**

"The standard of review for the admission of evidence is abuse of discretion." *State v. Williams*, 420 S.W.3d 713, 721 (Mo. App. W.D. 2014) (internal quotation omitted). "A trial court has broad discretion to admit or exclude evidence at trial." *Id.* (internal quotation omitted). "The trial judge is also in the best position to weigh the probative value of the evidence against its prejudicial effect." *Id.* (internal quotation omitted). "Abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* (internal quotation omitted). Reversal is warranted only if the error is so prejudicial that it deprived the defendant of a fair trial. *Id.* "Trial court error is not prejudicial unless there is a reasonable probability that it affected the outcome of the trial." *Id.*

**Analysis**

In the audio recording, Detective Oldham told Thompson that they were talking about more than one robbery and that police "talked to a lot of people; they're describing your vehicle." Detective Oldham asked Thompson, "How many times did you stop and drop them off?" Thompson answered, "I dropped them off three times yesterday." Detective Oldham then told Thompson, "There was a condensed period of time where they were getting in and out of the car quite a few times in that little condensed period of time; we have several reports from that condensed period of time. So we're just talking about dropping folks off." The Detective asked Thompson, "How many times was it in that little period of time? . . . So how many times, how many times did you drop them off and pick them up? We've got reports, we've got that vehicle description, so I know it happened, I want to know how many times they did this. We have these reports; how many?" Thompson then stated that he dropped Williams and West off four times.

15

But then he pinpointed five locations where he dropped the pair off, and he described the items they returned with when he picked them up. Thompson said that in each robbery, there was one victim. He stated the five incidents took place in an hour and a half time frame.

"The well-established general rule concerning the admission of evidence of prior criminal acts is that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008) (internal quotation omitted). The rationale for this rule is that "[e]vidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted." *Id.* (internal quotation omitted). This right is guaranteed in article I, sections 17 and 18(a) of the Missouri Constitution that a defendant has the right to be tried only on the offense charged. *Id.* at 587-88. Article I, section 17 states that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information[.]" Article I, section 18(a) provides "[t]hat in criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation[.]"

Accordingly, "[a]s a general rule, evidence of uncharged misconduct is inadmissible for the purpose of showing the propensity to commit such crimes." *State v. Sprofera*, 372 S.W.3d 17, 19 (Mo. App. W.D. 2012) (internal quotation omitted). "However, evidence of the defendant's prior misconduct is admissible when it is logically relevant—it has some legitimate tendency to directly establish the accused's guilt of the charges for which he is on trial, and when it is legally relevant—its probative value outweighs its prejudicial effect." *Id.* (internal quotation omitted). Evidence has a legitimate tendency to prove the specific crime charged when the State uses it to establish:

(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial.

*State v. Joyner*, 458 S.W.3d 875, 882 (Mo. App. W.D. 2015) (internal quotation omitted). "In addition, evidence of uncharged crimes that are *part of the circumstances or the sequence of events surrounding the offense charged* may be admissible to present a complete and coherent picture of the events that transpired." *Id.* (internal quotation omitted) (emphasis added).

Under these principles, we conclude that the trial court did not err in admitting the redacted audio recording of Thompson's statement. The recording was logically relevant to explain the sequence of events that surrounded the charged offenses. The three uncharged robberies were part of the circumstances of the two charged offenses and part of the sequence of events. Thompson transported Williams and West to and from each robbery. The five events "were a continuous sequence of events closely related in nature, scope, and time." *State v. Payne*, 135 S.W.3d 504, 508 (Mo. App. W.D. 2004). Thompson's statement about the five incidents "was admissible to provide a complete and coherent picture of the events that occurred that day." *Id.* at 507. Moreover, the recording of defendant's confession was legally relevant as its probative value outweighed any prejudicial effect. The evidence was "highly probative" of Thompson's guilt and "necessary to provide the jury with a complete understanding of the virtually unbroken chain of events that occurred that day." *Id.* at 508.

Point II is denied.

**Point III – Mistrial Due to Propensity Arguments**

In Thompson's third point, he asserts that the trial court plainly erred in failing to declare a mistrial, *sua sponte*, and in permitting the State to make propensity arguments in its opening statement and closing argument. Thompson concedes that although he objected to the

17

prosecutor's opening statement, he did not include that objection in his motion for new trial, and he did not object to the prosecutor's closing argument; therefore, this issue is not preserved and may be reviewed only for plain error pursuant to Rule 30.20.

**Standard of Review**

Any issue that was not preserved at trial is only reviewable for plain error. *State v. Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011). "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *Letica*, 356 S.W.3d at 167 (internal quotation omitted). Plain error review is a two-step process. *State v. Beggs*, 186 S.W.3d 306, 311 (Mo. App. W.D. 2005). "First, the court must determine whether the trial court committed an evident, obvious and clear error, which affected the substantial rights of the appellant." *Id.* "[T]he second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom." *Id.* at 312.

"[A]ppellate courts are wary of claims that a trial court erred in failing to declare a mistrial *sua sponte* in a criminal case." *State v. Sprofera*, 427 S.W.3d 828, 837 (Mo. App. W.D. 2014) (internal quotation omitted). "Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant cannot be removed any other way." *Id.* (internal quotation omitted). "Trial judges are not expected to assist counsel in trying cases, and trial judges should act *sua sponte* only in exceptional circumstances." *Id.* (internal quotation omitted). Accordingly, "a trial court's decision not to grant a mistrial *sua sponte* will not be reversed as plain error absent a clear showing of a

18

manifest abuse of discretion, which resulted in manifest injustice or a miscarriage of justice." *Id.* (internal quotation omitted).

**Analysis**

"The purpose of an opening statement is to inform the circuit court and the jury of the general outline of the anticipated evidence and its significance." *State v. Powell*, 286 S.W.3d 843, 850 (Mo. App. W.D. 2009) (internal quotation omitted). We will grant plain error review on the basis of an error in the prosecutor's opening statement "only when the defendant can show that the prosecutor's remark had a decisive effect on the jury's determination." *Id.* (internal quotation omitted). "This is a difficult standard to meet because the courts have concluded that the impact of the prosecutor's opening statement diminishes after the parties introduce evidence and give their closing arguments." *Id.*

Thompson challenges the portion of the prosecutor's opening statement in which he pointed out that Thompson picked up and dropped off Williams and West five times:

> Good morning. You sat through a long day yesterday and heard us talk a lot. One thing you didn't hear is why you're here. You're here because, by the defendant's own admission, he was the drop-off and getaway driver for five armed robberies. You'll hear, by the defendant's own admission, he picked up Mr. Williams, he switches from his Yukon to his girlfriend's rental car that doesn't come back to him. You'll hear, by his own admission, that he then picks up Mr. West and they drive around. And by his own admission, he drops them off five times. And he picks them up five times. Knowing they're committing robberies, knowing they have a gun. And knows the property taken. That's why you're here.

Thompson is not entitled to relief because he has not established that the record facially shows that the prosecutor's statement resulted in manifest injustice. "[A] defendant suffers no manifest injustice from a prosecutor's remark in his opening statement when the record establishes that the prosecutor's remark was supported by the evidence at trial, and the [trial] court instructs the jury that it should not consider the prosecutor's opening statement to be

19

evidence." *Id.* at 851.  In this case, the record establishes that the prosecutor's remarks were supported by evidence at trial:  in Thompson's redacted confession, he discussed his involvement in the uncharged robberies during the same time period as his involvement in the charged offenses.  And, as discussed in our analysis of Point II, this evidence was properly admitted at trial by the trial court, over Thompson's objection.

Thompson also claims that the trial court erred in permitting the State to make propensity arguments in closing by repeatedly referring to five robberies:

> Good morning, ladies and gentlemen.  Yesterday in opening argument, my co-counsel, Mr. Stigall, asked you, why were we here.  And he told you we were here because, by the defendant's own admission, he was the getaway driver in five separate armed robberies.  Every piece of evidence you have heard so far confirms that fact.
>
> . . . .
>
> They say the only thing linking is the audio.  Ladies and gentlemen, we have the same car description, we have the car pulled over, we have the three of them fleeing, we have the property recovered.  We have a continued course of conduct.  Drop off, pick up; drop off, pick up.  Five times.
>
> . . . .
>
> Ladies and gentlemen, the defendant is in the business of robberies.  And when the business is good, you're out there laughing about it, talking to prostitutes, driving around holding up people at gunpoint with two kids.

Thompson contends that the State used the three uncharged robberies as substantive evidence of Thompson's guilt of the two charged robberies.  As we discussed in Point II, the evidence Thompson complains should not have been permissible closing argument was, in fact, properly admitted evidence at trial by the trial court.  Thus, it can hardly be said that the trial court committed error in failing to, *sua sponte*, declare a mistrial in response to hearing the prosecutor argue the evidence that was properly admissible during the course of the trial.

20

"A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments." *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011). Here, Thompson's recorded statement to the police, in which he recounted his participation in five armed robberies, was properly admissible in evidence and was played for the jury. Therefore, the State was allowed to make these arguments in closing based on the evidence that had already been presented to the jury, as well as to argue reasonable inferences therefrom.

Point III is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and
Karen King Mitchell, Judge, concur.